## DAVIS v. WHITNEY et al.
### No. 9674.

Court of Civil Appeals of Texas. Galveston.
March 9, 1932.

Rehearing Denied April 7, 1932.

Boyles, Brown & Scott and Frank G. Dyer, all of Houston, for appellant.

Armstrong, Cranford, Barker & Bedford, of Galveston, for appellees.

PLEASANTS, C. J.

This suit was originally brought by appellees George E. and J. L. Whitney, who were in the automobile business under the firm name and style of Whitney Auto Company, against C. J. Jackson to recover upon twelve negotiable promissory notes for the aggregate sum of $869.99. By an amended petition E. E. Davis and appellant A. A. Davis were made defendants. The amended petition alleges, in substance, that the notes sued on were executed by defendant Jackson in part payment of the purchase price of a Fordson tractor to be used upon a fig farm owned and operated by Jackson and the defendants Davis, and the notes executed by Jackson were executed for himself individually and on behalf of the partnership of Jackson & Davis, and "that by reason of the existence of said copartnership C. J. Jackson, E. E. Davis and A. A. Davis became jointly and severally indebted and bound to pay said notes." This petition further alleges:

"Plaintiffs alleged in the alternative that subsequent to the execution of said notes, defendants E. E. Davis and A. A. Davis purchased an interest in and to said fig business and formed a co-partnership with the said C. J. Jackson by the terms of which partnership agreement they assumed the payment of said notes and said indebtedness evidenced thereby, and thereby became jointly and severally indebted to plaintiffs in the amount thereof.

"That the said defendants E. E. Davis and A. A. Davis purchased an interest in and to said fig farm and plant theretofore owned either in whole or in part by C. J. Jackson, and as a part of the consideration of said purchase assumed the payment of said note and the indebtedness evidenced thereby."

The defendants E. E. and A. A. Davis answered by general demurrer and general denial and by special sworn pleas denied that they, or either of them, were in partnership with defendant Jackson at the time the notes sued on were executed, or at any time. They further denied under oath that they, or either of them, ever assumed the payment of the notes. They also pleaded that if they assumed said debt, which they denied, such assumption was not in writing, was without any kind of consideration, and constituted a void promise to answer for the debt or default of another.

In reply to this answer, plaintiff filed a supplemental petition in which it is alleged that if they were mistaken "in alleging in their petition that E. E. Davis was a co-partner of A. A. Davis at the time of the assumption of the indebtedness sued upon, then that A. A. Davis purchased an interest in the farm and fig production business, formerly operated by the partnership of C. J. Jackson and Walter Terry; that he purchased the interest of Walter Terry in the fig farm owned by said partnership and in and to the machinery and equipment of said farm, and as a part of his agreement with the said Walter Terry, the said A. A. Davis verbally assumed to pay the said notes and indebtedness sued on which was incurred by the said C. J. Jackson for the said firm of Jackson and Terry as a partner-

ship obligation and agreed to assume the said Walter Terry's obligation in connection therewith and thereby became jointly and severally liable with C. J. Jackson for the payment of said debt. Plaintiffs also filed a trial amendment wherein they alleged that the interest purchased by A. A. Davis was the share and interest in and to said fig farm and business and the partnership interest in and to said fig farm and business of one Walter Terry and in the purchase of said interest said A. A. Davis, acted by and through his agent and/or partner E. D. Davis, who was authorized by the said A. A. Davis to act and contract for and on his behalf and that said contract negotiated by E. D. Davis for the assumption of said indebtedness thereby became the contract and obligation of the said A. A. Davis.

"On the trial of this cause, plaintiffs represented to the court that they did not desire to prosecute this suit further as to the defendant E. E. Davis, and acting thereon the trial court dismissed E. E. Davis from the suit. The defendant C. J. Jackson, although duly served with citation, filed no answer to plaintiffs' petition."

The trial upon the facts in the court below without a jury resulted in a judgment in favor of appellees against the appellant and the defendant Jackson for the amount found to be due upon the notes sued on.

It would serve no useful purpose to set out and discuss the several assignments and propositions presented in appellant's brief, since in our opinion the determination of the appeal depends only upon whether the evidence sustains a finding by the trial court that when appellant purchased the interest of Walter Terry in the firm of Jackson & Terry he agreed as part consideration for such purchase to assume and discharge Terry's liability for all of the debts of the firm, including the amount due appellees upon the Jackson notes.

The evidence shows that in 1925 when the notes sued on were executed, C. J. Jackson and Walter Terry owned together a tract of 231.8 acres of land in Harris county, each owning an undivided one-half interest therein, and were engaged as partners in the business of raising and selling figs produced on the land. The tractor for which the notes sued on were given in payment was purchased by Jackson for use in this partnership business of himself and Terry. Jackson was in charge of the conduct of the business, and all of the partnership business and all checks and notes given in carrying on the business were signed by him individually. He further testified that all of the tools and everything on the farm were owned by the partnership. This business does not appear to have been profitable, and in 1927 Terry sold his interest in the business. The deed made by him to his one-half interest in the land was made to Josephine Davis, a daughter of appellant, and as part consideration therefor the grantee assumed the payment of a note for $34,632.35, executed by the grantor in favor of E. D. Davis, a brother of appellant, and secured by a deed of trust upon Terry's interest in the land. Appellant testified that he bought Terry's interest in the farm for his daughter, giving it to her as a wedding present; that his brother, E. D. Davis, with his knowledge and consent, made the negotiations with Terry for the purchase of Terry's interest in the property, and that he turned over to his brother the entire handling of these negotiations.

Walter Terry testified:

"In regard to whether there were any current bills and indebtedness due by said business operated by me and Jackson at the time I ceased to be interested in said business, I did not keep the books on this business, and consequently did not know just what indebtedness Jackson had contracted. C. J. Jackson kept the books and records of said business partnership. I did not personally have charge of the purchase of farm implements and supplies. C. J. Jackson did all the buying.

"On or about July 7, 1927, I had occasion to sell and dispose of my interest in and to said fig-farm business and partnership. The consideration was $500.00 cash, cancellation and assumption of a debt of $34,632.35, the assumption of a mortgage debt on the farm, and whatever indebtedness was on the farm. I was to be relieved of all obligations against the farm contracted by partnership of Jackson and myself. For this consideration I sold my interest in the land and partnership and all tools and implements on the farm. I sold and disposed of such interest on July 7, 1927. I negotiated with E. D. Davis in the sale and disposition of such interest. In regard to whether said current bills and other debts included all debts incurred in connection with the purchase of farm implements and supplies for and on behalf of said business and partnership, it included everything. I did not retain any interest in and to said business and partnership, and I did not agree to pay any such current bills and debts that were then outstanding, subsequent to such sale."

Jackson also testified in substance that after the purchase of his interest in the fig farm by appellant he left the farm: "When I left the farm that fall, this tractor which was sold by the Whitney Auto Company to Terry and me was there and they were using it, farming with it, plowing the farm. That was after Davis had come into the partnership—three or four or five months; I don't know just how long it was. That tractor was a partnership bill. I signed my name individually to the notes. I was managing the partnership of Jackson and Terry. At that time Mr. Terry lived at Eldorado, Arkansas. I conducted all of the business of the partnership. He did not carry

on any of the routine administration of the farm. As to why I signed my name individually to the notes, well, I had been signing—when I signed the checks I signed them individually and everything; I signed my name to everything individually. These notes sued on in this case are the notes I refer to as having been given for the tractor. That is the debt that I refer to that I mentioned to Mr. Davis."

He had previously testified that before appellant purchased the farm he had told him that he intended to buy Terry's interest in the farm "and wanted to know what debts we had against it and I told him what debts we had against it and I told him what Terry and I owed as near as I could, the Whitney tractor, the Landrum debt, and a fellow by the name of Pat O'Day for a well, and I owed the South Texas Implement Company better than one hundred dollars for a disc plow and I owed the Houston Implement Company for repairs; that I didn't know what that amounted to, and some more little debts around, but I just can't recall them all—couldn't call them all that day. Yes, sir, I mentioned those debts to him. He asked me about them."

■■ This evidence was amply sufficient to authorize the trial court to conclude that the appellant through his agent, E. D. Davis, purchased from Walter Terry all of the tools and implements on the farm owned by Jackson & Terry, including the Fordson tractor for the purchase price of which the notes sued on were executed, and as part of the consideration for such purchase assumed to pay the indebtedness of the firm therefor, and we must presume in support of the judgment that that finding of fact was made by the court. The agreement to pay the Terry part of the indebtedness of the firm of Jackson & Terry was not required to be an express agreement to pay, but can be inferred from all the circumstances of the case. Salter v. Edward Hines Lumber Co., 77 Ill. App. 97.

■■ It is a settled rule of decision in this state that the assumption of notes given for the original purchase price of property by one who purchases the property from the original vendee and maker of the notes, as part consideration for his purchase, becomes liable as a principal to the holder of the indebtedness notes, and that such assumption and promise to pay such indebtedness is not required to be in writing, since the promise, for a valuable consideration, makes the obligation the promisor's debt, and is not a contract to answer for the debt, default, or miscarriage of another. Hill v. Holdtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Spann v. Cochran, 63 Tex 240.

It is clear that the deed from Terry to appellant's daughter only conveyed his interest in the land and embraces only that part of the subject-matter of the negotiations between the parties, and that the sale of the personal property of the firm of Jackson & Terry to appellant was effected by parol agreements between Terry and appellant's agent, E. D. Davis. This being so, it is obvious that the agreement of appellant to pay Terry's part of the indebtedness due by the Jackson & Terry firm on the personal property purchased by him at the time he purchased Terry's interest in the land is not affected by the failure of the deed for the land to include the sale of the personal property, since no writing was necessary to consummate such sale or evidence the agreement of appellant to assume the payment of the indebtedness thereon. Cox v. Bray, 28 Tex. 259; Thomas v. Hammond, 47 Tex. 54; Pierce Fordyce Oil Association v. Woods (Tex. Civ. App.) 180 S. W. 1181; 13 C. J. (note 90), 598.

In view of these conclusions the other propositions in appellant's brief become immaterial, and the judgment of the trial court must be affirmed.

Affirmed.