**STEPHENSON et al. v. CALLIHAM et al.**
No. 2355.

Court of Civil Appeals of Texas. Beaumont.
May 22, 1933.

Rehearing Denied May 31, 1933.

Douglas & Black, of San Antonio, for appellant.

H. S. Bonham, of Corpus Christi, and W. G. Gayle, of Beeville, for appellees.

WALKER, Chief Justice.

The judgment in this case dated the 20th day of July, 1931, was in favor of appellees against W. M. Stephenson, Grubstake Investment Association, a joint-stock company, and appellant, Longhorn Oil Company of Del-

aware, a corporation, and was to the following effect: (a) It canceled a town-site agreement dated the 24th day of October, 1922, recorded in Book 1, page 556, Deed Records of McMullen County, executed by S. A. Calliham, Lon A. Claunch, Mrs. Harriet Claunch, J. E. Calliham and wife, Lillie May Calliham, H. T. Calliham, Lucy M. Calliham, N. B. Calliham, Etta Calliham, and D. I. Calliham, as owners, or grantors, and W. M. Stephenson, as grantee, wherein certain rights and privileges were granted Stephenson and he assumed certain duties in connection with the platting of the town and selling of town lots on the 400 acres of land described in the contract. (b) It also canceled a supplementary agreement between the same parties, except Mr. and Mrs. J. E. Calliham, dated the 6th day of February, 1924, recorded in volume 2, page 1, Deed Records of McMullen County, making certain changes in the original contract as to the rights and obligations of W. M. Stephenson. (c) It also canceled a warranty deed dated the 6th day of February, 1924, executed in connection with the supplementary agreement whereby the tract of land containing 400 acres covered by the original contract was conveyed to W. M. Stephenson. (d) A personal judgment was rendered in favor of appellees against the defendants Stephenson, Grubstake Investment Association, and appellant, Longhorn Oil Company of Delaware, for the proceeds of certain lots sold by Stephenson and his associates not accounted for under the terms of the contract, the judgment against appellant being limited to the value of the assets received by it as assignee of Grubstake Investment Association. (e) The purchasers of certain of the lots platted under the original contract were quieted in their titles as against the claims of appellees. The judgment in part gave effect to the verdict of the jury, but was in part non obstante veredicto and was in part upon the undisputed facts. The improvements placed upon the premises under the terms of the original contract were adjudged to belong to Stephenson and appellant. The appeal was by appellant, Longhorn Oil Company of Delaware, to the San Antonio Court of Civil Appeals, transferred to the Austin court, then to this court, by orders of the Supreme Court. Appellees have also cross-assigned error against appellant.

■ Appellant, Longhorn Oil Company of Delaware, predicates its appeal upon the following assignments of error:

It is contended that the trial court erred in refusing to grant appellant's petition of removal to the federal District Court. There is no merit in this contention. This suit was filed on the 9th day of July, 1924, by J. E. Calliham and L. D. Stroud, as plaintiffs, against W. M. Stephenson. The appellees herein, the other parties to the original town-site contract, were not parties to the suit when originally filed, but were brought in as defendants by the original plaintiffs by their fourth amended original petition filed on the 21st day of June, 1926. Appellees originally answered as defendants and continued in that relation until the 3d day of June, 1927, when they filed their petition as plaintiffs, joining the original plaintiffs in their prayer for cancellation of the town-site contracts and the warranty deed to Stephenson, as above described, complaining of Stephenson and Grubstake Investment Association, for whom Stephenson had been acting as agent in taking and exploiting the town-site contract. On the 23d day of May, 1929, Grubstake Investment Association assigned the town-site contract and all its interest in the land described therein to appellant, Longhorn Oil Company of Delaware. Appellant was brought into the case as a defendant prior to the January term, 1931. Because the regular judge was disqualified to try this case, appellant filed no answer until July 20, 1931, at a term of court called specially to try this and other cases in which the regular judge was disqualified, at which time, in due order of pleading, it filed its petition for removal to the federal District Court. The petition for removal was filed before this case was ever called for trial and before judgment by default or any other order was asked for by appellees. Though appellant is a corporation, it is in fact nothing more than a reorganization of the joint-stock association, Grubstake Investment Association. The stockholders in Grubstake Investment Association valued its assets at $55,000, and formally authorized its dissolution and the conveyance of the assets to appellant upon a consideration of $55,000. There is nothing in the record suggesting or intimating in any way that appellant paid 1 cent for the assets of Grubstake Investment Association, but merely took them over in liquidation of its capital stock. The officers and stockholders of appellant were practically the same as the officers and stockholders of Grubstake Investment Association. Appellant simply succeeded to the rights of Stephenson and Grubstake Investment Association in this litigation, and as such assignee necessarily took the place held by them in the litigation. It follows that, since the court had jurisdiction over the assignors, it likewise acquired exclusive jurisdiction over the assignee.

■ Appellant erroneously contends that the judgment should be reversed because of the want of necessary parties. The point made is that Mrs. S. A. Calliham was a party to the original contract; that she was a party to the petition to cancel the contract and warranty deed; that she died pending the litigation; and that appellees made no allegation that administration was not had on her estate and that no administration was necessary. Appellees alleged, and offered proof in support thereof, that prior to the death of

Mrs. S. A. Calliham she assigned her rights in the subject-matter of this litigation to them. On this allegation she was properly dismissed from the suit; and, as she had conveyed her right, title, and interest in this property to appellees, her heirs and legal representative, if she had one, succeeded to no interest therein.

■ The point that Mrs. S. A. Calliham was a necessary party was suggested for the first time in the lower· court on motion for new trial. In answer to this contention the trial court heard proof on the issue thus made. The reception of this proof was not error. Had Mrs. Calliham been, in fact, a necessary party, appellant would have been entitled to a new trial. It being a matter within the proper inquiry of the trial court, evidence was correctly received thereon.

■ Under the original contract, appellant and its assignors spent $14,580.34 in improving the 400 acres of land for town-site purposes. Under the contention of appellant, only $1,927.79 of this sum was repaid, but appellees contend that the sum repaid was $4,137. However, under appellant's proposition, the amount repaid presents an immaterial issue. The point made by appellant is that appellees cannot have cancellation without repaying all the money invested in the town-site property. The contract called for the repayment of this entire sum out of the proceeds of lot sales. No personal liability therefor attached in anyway against appellees. The contract was to run for ten years. The cancellation was granted on the ground that appellant and its assignors had breached certain material conditions of the contract. In granting cancellation, the court ˙ vested title in appellant to all improvements put upon the property by it and its assignors. By the terms of the judgment of the court appellees were not permitted to profit in any way by appellant's improvements. Appellant could have been repaid only through the ̀proceeds of the sale of the town lots. Having lost this right, by its own wrong and the wrong of its assignors, that is, having fatally breached the contract, it was left without any source. of recoupment. Therefore, when the court canceled the contract, because of the default and wrong thus committed, appellant was granted all its equitable rights by the decree, vesting it with title to its improvements. The following authorities fully support this conclusion: Johle v. Martin (Tex. Civ. App.) 291 S. W. 296; Donoho v. Hunter (Tex. Civ. App.) 242 S. W. 282; 9 C. J. 1209, 1210; 7 Tex. Jur. 964.

■ Appellant asserts that a personal judgment was rendered against it for the sum of $1,507.93. The amount of this judgment, under appellant's proposition, is immaterial, but, to keep the record straight, the appeal bond executed by appellant states that the personal judgment against it was for $827. This sum represented the proceeds of ˙ lot sales collected by Stephenson and Grubstake Investment Association which were due appellees under the terms of the original contract. As appellant did not make these sales and did not receive directly the proceeds of the collections, it now asserts that it was not liable for any part thereof. This contention is˙ denied. Appellant was organized, as stated above, to receive, and in fact did receive, the assets of the Grubstake Investment Association, and took over these assets without paying any consideration therefor, except in liquidation of the capital stock subscription of its stockholders. Under this state of facts, appellant became liable for the obligations of Grubstake Investment Association to the extent decreed by the court, that is, to the value of the assets received by it. Cattle Raisers' Loan Co. v. Sutton (Tex. Civ. App.) 271 S. W. 233. The rule making appellant liable was thus stated by the court in Modern Dairy & Creamery Co. v. Blanke & Hauk Supply Co. (Tex. Civ. App.) 116 S. W. 153: "Where a corporation has been formed by the members of a partnership subsequent to the incurring of a debt and the assets of the partnership have been assigned to the corporation for the continuance of the business it will be presumed that the corporation assumed the partnership debts and it will be prima facie liable therefor."

In Morrison v. Sewell (Tex. Civ. App.) 4 S. W.(2d) 1029, it was said: "Where owner of business transferred assets to corporation in which he owned capital stock the corporation is presumed to have assumed debts of business and is prima facie liable therefor." See, also, 8 Thompson on Corporations, page 121.

■ Appellant's fifth proposition is to the effect that the court erred in rendering any sort of judgment against W. M. Stephenson. As Stephenson is not a party to this appeal in any way, the judgment against him is not before us for review.

■ The 400 acres included in the original contract was owned by the grantors as tenants in common. Afterwards, it was partitioned among the owners, and a specific tract of 69 acres was set apart to original plaintiff J. E. Calliham. Without the consent of the other parties to the contract, Stephenson and Grubstake Investment Association released this 69 acres to J. E. Calliham, thereby taking it out of the original town-site contract. Answering question No. 4, the jury found that the releasing of the 69 acres to Calliham from the operation of the town-site agreement rendered the substantial carrying out of the original agreement "as to the lands remaining, impossible to a material degree." Without reviewing the testimony on the issue, this finding by the jury had abundant support. In fact, it followed almost as a matter of law. On this finding there is no merit in ap-

pellant's contention that the act of Stephenson and Grubstake Investment Association in releasing the 69 acres was insufficient to justify a cancellation of the original townsite agreement. Arlington Heights Realty Co. v. Citizens' Ry. & Light Co. (Tex. Civ. App.) 160 S. W. 1109.

There is no basis in the record to support appellant's proposition that "the townsite contract was cancelled by the trial court on the ground that it was a contract of a personal nature with Stephenson and, therefore, could not be assigned without appellees' consent."

The court did not err in allowing interest in favor of appellees for the several amounts collected by appellant's assignors. The contract provided for settlements regularly as and when the lots were sold and complete settlements on yearly sales at the end of each year. The interest allowed against appellant merely gave effect to the express terms of the contract.

The trial court did not err "in allowing appellees a participation in partial payments made for lots not paid for and not deeded." The contract was canceled. Appellant and its assignors no longer have any rights thereunder. It was clearly within the equitable powers of the court to award appellees their portion of the assets that had accrued under the contract before the cancellation was decreed. However, we agree with appellees that this section of the judgment in favor of appellees has complete support in the terms of the contract itself.

The court awarded appellees $112.44 as their interest in the proceeds of the sale of certain lots made to one J. R. Secrest. This was the amount due appellees upon the valuation of the Secrest lots, as fixed by the jury. Stephenson sold these lots to Secrest, who, in fact, paid for them. Because Stephenson had not executed a deed to Secrest for these lots, the point is made that appellees were not entitled to their part of the proceeds. This contention is without merit. The court found from the evidence and the verdict of the jury that the equitable title to these lots was vested in J. R. Secrest, and that his heirs were entitled to specific performance. Under this statement, the title to these lots was as effectively divested out of appellees as if Stephenson had executed a deed to Secrest, and therefore appellees were entitled to an accounting for the value of the lots, as received by Stephenson.

By their cross-assignments appellees insist that the personal judgment against appellant should be increased by the sum of $413.89, with interest. These cross-assignments are based upon the finding of the jury that certain purchases made by Stephenson of lots in block 34, block 30, block 31, block 29, and block 41 were made in bad faith and not under the terms of the contract allowing him the personal right to purchase certain of the lots. The sum claimed by appellees by their cross-assignments is based upon the jury's finding that the value of these particular lots was $75 each. The trial court overruled appellees' contention on the ground that Stephenson had the right, under the sixth section of the contract, to purchase these lots on an acreage basis of $100 per acre, and upon this finding awarded appellees their accounting. The sixth section was as follows: "6. It is agreed that said Stephenson shall have active management and control of said Townsite and all things pertaining thereto, and shall have the right to contract for and dispose of all lots, blocks or parcels of land contained within the area hereinabove mentioned, provided, however, that said sale price of the lot or lots shall be one hundred (100%) per cent greater than the actual sales price of the land according to its acreage value."

Without going into further detail on the facts under these cross-assignments, we believe the trial court was correct in denying appellees this additional recovery.

For the reasons stated the judgment of the lower court is in all things affirmed.