**CHARLES BROADWAY ROUSS, Inc., v. COOPER.**

**In re W. H. SWAN & CO., Inc.**

**No. 7024.**

Circuit Court of Appeals, Fifth Circuit.

March 31, 1934.

672

Pasco Altman, of Tampa, Fla., for appellant.

Geo. T. Shannon, of Tampa, Fla., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

W. H. Swan & Co., Inc., was adjudicated bankrupt in involuntary proceedings on November 5, 1931. Charles Broadway Rouss, Inc. (hereafter called Rouss), filed a claim as an unsecured creditor in the amount of $82,596.66. The trustee objected to the claim on various grounds, some of which, hereafter referred to, were sustained by the referee and the claim was disallowed. On review by the District Court, the ruling of the referee was affirmed without opinion. This appeal followed.

The following undisputed facts are shown by the record: The bankrupt corporation was organized on January 1, 1928, by W. H. Swan, who had been operating a number of general merchandise stores in towns in Florida for some 10 or 12 years prior thereto under the style of W. H. Swan & Co. Swan had purchased large amounts of merchandise from Rouss for this business, and he was indebted to it in the sum of $113,427.65. In organizing the corporation of W. H. Swan & Co., Inc., he transferred to it all of his existing stores with their entire stocks of merchandise and all other assets of that business, and received in payment the entire capital stock of the corporation. The bankrupt had no other capital. The shares had no par value. A balance sheet filed with the income tax return of the bankrupt for the year 1928 indicates that the assets received were worth $210,612.36 and that total liabilities of $144,973.03 were assumed, leaving a surplus of $65,639.33. Prior to the incorporation of the bankrupt, Swan went to New York and had an interview with Botting, vice president and general manager of Rouss, who had authority to enter into a contract releasing Swan personally from his debt. Swan and Botting testified that an agreement was reached by which the corporation would assume the debt of Swan and he would be released individually. Brown, who was bookkeeper, secretary, and treasurer of the bankrupt at the outset, and president when it was adjudicated bankrupt, testified the bankrupt had assumed the debt of Swan to Rouss. After the incorporation of the bankrupt, it continued the business exactly as Swan had conducted it, used the identical books of account, and continued the account with Rouss by making additional entries on the same ledger sheets. Rouss continued the account in the same manner on its books. The bankrupt purchased merchandise from Rouss totalling $45,654.30, and from time to time made payments on account, totalling $76,485.35, to reduce the balance, including the amount originally owing by Swan, and not in settlement of any particular invoices. The bankrupt did not give a note or any other specific written agreement to Rouss assuming Swan's debt. There was no resolution of the board of directors to that effect, but it is not shown that the bankrupt had a board of directors or any officers other than Brown and Swan. Though not shown, it may be assumed that, except for qualifying shares, Swan continued to be the only stockholder. In filing its schedules, the bankrupt listed Rouss as an unsecured creditor for the exact amount as claimed. The bankrupt had no other creditors who were creditors of Swan when it was organized.

Appellant contended before the referee that there was novation by the substitution of a new debtor, the bankrupt, for the old debtor, Swan, and the release of the old debtor. The trustee contested this, and contended that the bankrupt could not assume the debt of Swan except by written instrument, which had not been shown, under the statute of frauds (Comp. Gen. Laws Fla. 1927, § 5779), and that the bankrupt had overpaid Rouss for the amount of merchandise purchased by the bankrupt itself. The referee rejected the plea of novation and held with the contentions of the trustee as above set out.

The rule supported by the weight of authority is that, where a corporation has succeeded to the business of another corporation, partnership, or individual, it is liable for the debts of the other if it has expressly or impliedly assumed them and has received adequate consideration. 14 C. J. § 368; 14-a C. J. § 2795 (Corporations).

The above-recited facts conclusively show an implied agreement on the part of the bankrupt to assume and pay the debt of Swan to

Rouss based on full consideration. There was no need for a written instrument promising to pay the debt, as the transaction did not fall within the provisions of the statute of frauds. The agreement was not a collateral promise by a stranger to pay the debt of a third person. The bankrupt had a personal, immediate, and pecuniary interest in acquiring the going business of Swan, with its good will and all of its other assets. The promise to pay the debts of that business was a direct promise for its own benefit supported by adequate consideration. Davis v. Patrick, 141 U. S. 479, 12 S. Ct. 58, 35 L. Ed. 826.

As what has just been said disposes of the case, it is unnecessary to extensively discuss the other issues presented. It is enough to say that novation has been sufficiently shown. And, in any event, no contrary agreement appearing, payments on account should be first attributed to the oldest debt.

The judgment appealed from is reversed, and the case is remanded, with instructions to allow the claim.

Reversed and remanded.