**MAJOR APPLIANCE COMPANY, Inc.,
Alleged Bankrupt, Appellant,**

v.

**HUPP CORPORATION et al., Appellees.**

**No. 16459.**

United States Court of Appeals
Fifth Circuit.

April 8, 1958.

———◆———

Fritz Lyne, Lyne, Blanchette & Smith, Robert W. Smith, Dallas Tex., for appellant.

Robert F. Ritchie, J. W. Crosland, Ritchie, Ritchie & Crosland, Dallas, Tex., for appellees, Hupp Corp., Price Supply Co., Ohio Foundry & Mfg. Co., Apex Rotarex Corp., Squire Haskins Studio and Rowland's Furniture & Appliances.

Before CAMERON, JONES and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

This appeal is from a judgment entered by the court below adjudicating appellant, Major Appliance Company, Inc., a bankrupt upon the petition of appellee, Hupp Corporation, along with six other petitioning or intervening creditors. After hearing the witnesses introduced by the respective parties and considering the voluminous exhibits, the District Court delivered an oral opinion and followed it with findings of fact and con-

clusions of law.[1] These findings set forth the facts with accuracy and the pertinent portions are copied in the foot-note and will be considered as the statement of facts upon which the appeal will be decided.[2] The question presented is

1. Rule 52(a), Fed.Rules Civ.Proc. and cf. Rule 81(a) (1), Fed.Rules Civ.Proc., 28 U.S.C.A.; 7 Moore's Federal Practice, 2 Ed., p. 4432; 2 ib. pp. 14 et seq. including General Orders of the Supreme Court numbers 36 and 37; 1 Collier on Bankruptcy, 14th Ed., pp. 328 et seq.; Theard v. Fidelity & Deposit Co., 5 Cir., 1953, 202 F.2d 880, 882 et seq.; and Thompson v. England, 9 Cir., 1955, 226 F.2d 488, 491, 54 A.L.R.2d 1084.

2. "The above entitled cause came on regularly for trial and the Court having duly considered the evidence and being fully advised in the premises now finds the following:

"Findings of Fact.

"1. An involuntary petition in bankruptcy was filed against Major Appliance Company, Inc., on August 24, 1956 in which the petitioning creditors were Hupp Corporation, a Virginia corporation, Price Supply Company, a Texas corporation, and Sonic Industries, Inc., a New York corporation.

"2. With leave of the Court a petition in intervention was filed in this cause on September 21, 1956 in which the following additional creditors intervened in the subject proceedings: Ohio Foundry & Manufacturing Company, an Ohio corporation; Apex Rotarex Corporation, an Ohio corporation; Squire Haskins, d/b/a Squire Haskins Studio, a sole proprietorship of Dallas, Texas; and I. M. Rowland, d/b/a Rowland's Furniture & Appliances, a sole proprietorship of Dallas, Texas.

"3. Major Appliance Company, Inc., is a Texas corporation with its principal and only place of business at 1532 Edison Street in the City of Dallas, Dallas County, Texas, within the Northern District of Texas, * * *.

"4. * * *

"5. Major Appliance Company, Inc., has at all times material to this proceeding owed debts in excess of $1,000.00.

"6. The petitioning creditors have provable claims against Major Appliance Company, Inc., liquidated as to amount and not contingent as to liability which amount in the aggregate, in excess of the value of securities held by them, to more than $500.00, the amounts of such claims being as follows: (a) Hupp Corporation, $300,156.47; (b) Price Supply Company, $206.47; Sonic Industries, Inc., $13,131.23; (d) Ohio Foundry Manufacturing Company, $990.70; (e) Apex Ro-tarex Corporation, $118.79; (f) Squire Haskins Studio, $126.50; (g) Rowland's Furniture & Appliance, $486.11.

"7. On June 8, 1956, Major Appliance Company, Inc. transferred merchandise of a value of $10,687.98 to Raytheon Manufacturing Company, a creditor, on account of an antecedent debt due said creditor.

"8. On May 21, 1956, Major Appliance Company, Inc., paid the sum of $286.67 to Frank B. Cole, a creditor, on account of an antecedent debt.

"9. On May 28, 1956, Major Appliance Company, Inc., paid the sum of $130.00 to Frank B. Cole, a creditor, on account of an antecedent debt.

"10. On May 28, 1956, Major Appliance Company, Inc., paid the sum of $113.33 to Frank B. Cole, a creditor, on account of an antecedent debt.

"11. On June 5, 1956, Major Appliance Company, Inc., paid the sum of $188.50 to Lee H. Skillman, a creditor, on account of an antecedent debt.

"12. During the period May 21, 1956, through June 8, 1956, and at all subsequent dates the aggregate of the property of Major Appliance Company, Inc., was not at a fair valuation sufficient in amount to pay its debts.

"13. On May 17, 1956, Major Appliance Company transferred the sum of $2,643.43 to S. N. Cathey without fair consideration.

"14. On June 4, 1956, Major Appliance Company transferred the sum of $1,500.-00 to Admiral Corporation without fair consideration.

"15. During the period May 17, 1956, through June 4, 1956, and at all subsequent dates the present fair salable value of the property of Major Appliance Company, Inc., was less than the amount required to pay its debts.

"16. Major Appliance Company, Inc., was incorporated on April 3, 1956, at which time it acquired all the assets and assumed all the liabilities of Major Appliance Company, and individual proprietorship formerly owned by Lee H. Skillman.

"17. Both the minutes of the organizational meeting of the board of directors of Major Appliance Company, Inc., held on April 9, 1956, and the bill of sale from Lee H. Skillman to Major Appliance Company, Inc., dated April 18, 1956, constitute memorandums in writing evidencing the agreement of said corporation to assume the liabilities of Major Appliance

whether the court's findings were clearly erroneous or its legal conclusions without sound basis.

Decision of the case below turned essentially upon the question whether appellant assumed the liabilities of the proprietorship, Major Appliance Company, owned and operated by Lee H. Skillman, when appellant, about April 3, 1956, acquired title to all of the assets of said proprietorship including its name and good will.

Appellant contends that this basic question should be decided from the face of the bill of sale by which it acquired the proprietorship business, and that no assumption of liabilities by the corporation appears on the face of said instrument, and that the law will not imply such an assumption under the circumstances here prevailing.

Appellees claim just as confidently that the bill of sale does carry the necessary implication that the assets of the proprietorship were acquired subject to its liabilities, and that this is particularly true when the instrument is construed in the light of the circumstances surrounding the parties at the time of its execution and in the light of the construction placed upon it by the parties. We agree with the position of appellees, which was adopted by the court below.

██ It is the court's duty, if it can, to determine the intent of the parties from the writing they executed, construed from the standpoint of the parties, circumstanced as they were, 12 Am. Jur., Contracts, § 227, § 229 and § 247 et seq. Lee H. Skillman had for some time operated a sole proprietorship in the appliance business in Dallas, Texas, under

Company, the individual proprietorship.

"18. * * *

"19. The assignments of accounts receivable by respondent Major to petitioner Hupp during May, June and July, 1956, were duly authorized by the directors and officers of Major and were for current consideration.

"20. * * *

"Conclusions of Law.

"From the foregoing facts the Court concludes:

" * * *

"3. On and after May 17, 1956, Major Appliance Company, Inc., was insolvent within the meaning of Section 1(19) and Section 67d(1) (d) of the Bankruptcy Act [11 U.S.C.A. §§ 1(19), 107, sub. d (1) (d)].

"4. Major Appliance Company, Inc., committed the following acts of bankruptcy:

"(a) By making preferential transfers of its property within the meaning of Section 3a(2) and Section 60a(1) of the Bankruptcy Act [11 U.S.C.A. §§ 21, sub. a(2), 96, sub. a(1)] to each of the following creditors on account of antecedent debts while insolvent and within four months before the filing of the petition herein, the effect of which transfers was to enable each of such creditors to obtain a greater percent of his debt than some other creditor of the same class: (1) Raytheon Manufacturing Company on June 8, 1956; (2) Frank B. Cole on May 21, 1956, and twice on May 28, 1956; (3) Lee H. Skillman on June 5, 1956.

"(b) By making the following fraudulent transfers of its property within the meaning of Section 3a(1) and Section 67d (2) of the Bankruptcy Act, such transfers being made within one year prior to the filing of the petition in this case without fair consideration by Major Appliance Company, Inc., which was insolvent at the times of such transfers: (1) to S. N. Cathey on May 17, 1956; (2) To Admiral Corporation on June 4, 1956.

"5. None of the petitioning creditors is estopped from joining in the petition in this proceeding.

"6. The Statute of Frauds of the State of Texas, Article 3995(2), R.C.S., Texas, is not applicable to the transaction involving the assumption of the debts of Major Appliance Company, the individual proprietorship, by Major Appliance Company Inc.

"7. In any event, said provision of the Statute of Frauds was complied with in said transaction.

"8. Major Appliance Company, Inc. assumed all of the debts of Major Appliance Company, the individual proprietorship formerly owned by Lee H. Skillman.

"9. * * *

"10. * * *

"11. Major Appliance Company, Inc., should be adjudicated a bankrupt.

"Let judgment be entered accordingly.

"Dated the 6th day of October, 1956.

"T. Whitfield Davidson,

United States District Judge."

the name "Major Appliance Company." Through an elaborate sales organization he sold air conditioning units, stoves, refrigerators and other products of various national manufacturing concerns, chief among whom was Gibson Refrigerator Company.[3] By the spring of 1956, he had come into financial difficulties and his chief creditor was Hupp. Several arrangements for the handling of Hupp's products were made between Skillman and, later, appellant on the one side and Hupp on the other, the details of which it is not necessary to set out. At the time of the transfer by Skillman to appellant, the Hupp merchandise, consisting of refrigerators and like items, had been placed in Lawrence Warehouse (a portion of the Major place of business separated by a chicken-wire partition) subject to withdrawal only upon payment therefor.

In April, 1956, Skillman had an agreement with several individuals to purchase stock in a corporation to be formed by him, and April 3, 1956, a charter was issued by the State of Texas to Major Appliance Company, Inc. The organization meeting of the Board of Directors was held April 9, 1956, which meeting was attended by Skillman, John A. Erhard, the attorney who handled the incorporation and subsequently represented it, and by Frank B. Cole and James K. Wilson, two subscribers to its stock. Skillman was elected president and Erhard secretary-treasurer. After a statement by Mr. Cole, confirmed by Mr. Erhard, that the fair value of the proprietorship properties and business of Skillman was $174,944.70, action was taken by the directors which is reflected in the Minutes in these words: "The Secretary then presented to the Board a bill of sale executed by Lee H. Skillman transferring, assigning and delivering to the corporation all of the assets of Major Appliance Company and its *entire net worth* including good will and the trade name for a consideration of $174,944.-70." (Emphasis supplied.) It was thereupon resolved that the corporation receive the bill of sale executed by Skillman and issue to him 1750 shares of its common stock.[4] The bill of sale, exclusive of acknowledgment, is set out in the Footnote, and the portions of crucial importance to a decision of the case are italicized.[5]

3. The parties agree that the business of Gibson Refrigerator Company was acquired by appellee Hupp Corporation during the course of the transactions involved in this case (April 30, 1956) and, in this opinion, the name Hupp will be used to include the corporation bearing that name and also Gibson Refrigerator Company.

4. The difference between the par value of that number of shares of stock and the $174,944.70 was made up by a cash payment by Skillman to the corporation.

5. "Bill of Sale

State of Texas   }   Know All Men By
County of Dallas }    These Presents:

"That I, Lee H. Skillman, Dallas, Dallas County, Texas, doing business as Major Appliance Company, 1532 Edison Street, Dallas, Texas, for and in consideration of the issuance and delivery to me of (1,750) shares of Common stock in Major Appliance Company, Inc., the receipt and legal sufficiency of which is hereby acknowledged and confessed, have bargained, sold, granted and delivered and by these presents do bargain, sell and deliver unto Major Appliance Company, Inc., its successors and assigns all the merchandise, accounts and accounts receivable, conditional sales contracts, chattel mortgages, fixtures and all other assets located in Major Appliance Company, or those now in transit to Major Appliance Company, now owned by me, together with the good will of said business and the trade name;

"To Have And To Hold unto the said Major Appliance Company, Inc., its successors and assigns forever; and

"I, the said Lee H. Skillman, for myself, my heirs, executors, administrators and assigns *do hereby covenant with the Major Appliance Company, Inc., that I am the true and lawful owner of the above described goods and assets and have full power to sell and convey the same and that I do hereby warrant I will defend the same against all claims of any persons whomsoever, to the full extent of the investment accounts and net worth in said business.*

Appellees placed on the stand Mr. Skillman, the president, director and majority stockholder of the corporation, and Mr. Erhard, the secretary-treasurer and a director. By them it was shown that the transfer of the proprietorship assets was consummated upon the basis of a balance sheet furnished by Skillman which showed assets of the value of $678,647.99, and liabilities totaling $503,703.29; and the amount of stock issued to Skillman was determined by subtracting the latter from the former. The item as entered on the balance sheet was "Investment Accounts and Net Worth $174,944.70." That document also showed that, of the total of liabilities shown above $205,355.80 was carried as "Deferred liabilities—Gibson merchandise held in Lawrence Bonded Warehouse which is not due until merchandise is released." The balance sheet also showed that a part of the inventory transferred by the bill of sale was Gibson merchandise of the value of $205,355.80 "held in Lawrence Bonded Warehouse which is subject to withdrawal as needed." An amount of cash which appellant claims to be sixty-three thousand dollars was paid into the corporation by Erhard and five other individuals for shares of its capital stock.

It seems clear from the bill of sale construed in the light of these circumstances, that the parties intended that the transfer made by Skillman to appellant was subject to the debts owed by the business. In other words, as set forth in the Minutes of the corporation, it bought only the "net worth." Skillman limited his liability under his warranty to "the full extent of the Investment Account and Net Worth in said business,"—words taken from the balance sheet upon which the deal was consummated. Under appellant's conten-

tion, appellant took all of the assets of the proprietorship free of its debts.[6] Such a contention is not supported by the language of the bill of sale and the only reasonable construction which could be placed upon it, under the circumstances, is the interpretation expressed in the findings of the trial court.

Appellees take the position further that the most appellant can possibly argue is that the language of the bill of sale is not sufficiently clear, definite, explicit and harmonious to require its interpretation without resort to the aids conventionally employed to assist in arriving at the intention of the parties to a written instrument. Cf. Baker v. Nason, 5 Cir., 1956, 236 F.2d 483, 491 et seq., and authorities there cited, and also Petroleum Financial Corporation v. Cockburn, 5 Cir., 1957, 241 F.2d 312, 317 et seq. They invoke the rule laid down in 12 Am.Jur., Contracts, 249, as being expressive of that universally accepted in such a situation: "In the determination of the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves is to be considered by the court and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms. In fact the courts will generally follow such practical interpretation of a doubtful contract."

They call attention to several instances of interpretation of this bill of sale by the parties: e. g., appellant entered the liabilities of the proprietorship upon its books exactly as it did its assets, and proceeded to pay some of the proprietorship debts; appellant's president employed a firm of reputable certified public accountants to make an audit of the business as of May 31, 1951, and that audit reflected

---

"Witness my hand at Dallas, Tex., on this the 18 day of April, 1956.
            "Lee H. Skillman

            ─────────────────
                Lee H. Skillman"
This Bill of Sale was confirmatory of the actual transfer by Skillman to the corporation on or about April 3, 1956.

6. This theory would assume that the debts would be paid by Skillman out of funds derived from sources other than the proprietorship. It was plain from the evidence that Skillman did not have any independent resources from which the debts could have been paid.

the debts of the proprietorship as a corporate obligation.[7] They further point out that they called to the stand the secretary-treasurer and the president of appellant, availing themselves of the rights given by Rule 43(b), F.R.Civ.P., and that both made it clear that they understood that the corporation acquired by the bill of sale the liabilities as well as the assets of the proprietorship.[8]

Viewed from any standpoint, it seems clear that the court below correctly interpreted the legal effect of the transaction and considered the proprietorship debts as liabilities of the corporation in determining whether or not it was insolvent.[9]

The same reasoning disposes of appellant's contention that any obligation on the part of appellant to pay the debts of the proprietorship is unenforceable because it comes within the Texas Statute of Frauds.[10] It is clear, under the facts recited above, that the secretary of the corporation correctly interpreted the transaction when he concluded that it bought the business of the proprietorship embracing both the assets and the liabilities. The obligation appellant assumed, therefore, was an original obligation imposed as a part of the consideration, and was not a collateral obligation to guarantee a debt owed primarily by Skillman.[11]

Appellant concedes at the outset of its argument that the court below was correct in holding it to be insolvent if there was legal basis for its holding that the corporation assumed the liabilities of the proprietorship. Our decision that

---

7. The auditor who had charge of the work and who compiled the report of the audit, when asked by the court whether he had included the proprietorship liabilities along with its assets, testified as follows: "Q. You took into consideration all of the liabilities it was supposed to have assumed? A. Yes, because those were on the books of the company, and because we interpreted the Minutes of the corporation to have so assumed."

8. The secretary, Mr. Erhard, who was also the attorney, testified: "The only conclusion I have or could have in talking to these men, my money was in it too, and I have still got some money in it, and I even advanced the incorporation costs and never got them back, but we were buying a business, buying a going concern on the balance sheet, and in that capacity we were buying the assets, assuming the liabilities of business."

Mr. Skillman, the president, when pressed upon cross-examination, stated that he did intend that the corporation would pay the debts of the proprietorship, although he could not say that there was any definitive agreement to that effect.

9. This interpretation is supported by our case of Charles Broadway Rouss, Inc., v. Cooper, 5 Cir., 1934, 69 F.2d 671, and by the general law, 8 Fletcher Cyclopedia Corporations, Permanent Edition, § 4012, 4014, 10 Tex.Juris. § 353, and by the Texas cases. Cf. Baca v. Weldon, Tex. Civ.App.1950, 230 S.W.2d 552, 554;

English Freight Co. v. Knox, Tex.Civ. App.1944, 180 S.W.2d 633, 637; Hunger v. Toubin Bros., Inc., Tex.Civ.App. 1942, 164 S.W.2d 765, 767; East Texas Title Co. v. Parchman, Tex.Civ.App.1938, 116 S.W.2d 497; Modern Dairy & Creamery Co. v. Blanke & Hauke Supply Co., Tex.Civ.App.1909, 116 S.W. 153, 154; Stephenson v. Calliham, Tex.Civ. App.1933, 60 S.W.2d 805, 807; Meadows v. Mitchell, Tex.Civ.App.1931, 39 S.W.2d 106, 107; Morrison v. Sewell, Tex.Civ. App.1927, 4 S.W.2d 1059, 1031.

10. 12 Vernon's Texas Civil Statutes, Art. 3995:

"No action shall be brought in any court * * * unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * * 2. To charge any person upon a promise to answer for the debt, default or miscarriage of another * * *."

11. 49 Am.Jur., Statute of Frauds, Par. 63, et seq., 83, 87, 91, 95, and 118; Spann v. Cochran & Ewing, 1885, 63 Tex. 240; Hill v. Hoeldtke, 1912, 104 Tex. 594, 142 S.W. 871, 40 L.R.A.,N.S., 672; Davis v. Whitney, Tex.Civ.App.1932, 48 S.W. 2d 685; and Republic Supply Co. v. Waggoner, Tex.Civ.App.1926, 283 S.W. 537. And cf. Charles Broadway Rouss, Inc., v. Cooper, 5 Cir., 1934, 69 F.2d 671.

this point was correctly decided by the court below therefore disposes of the entire argument of appellant except its contention that there were not three creditors with provable claims, liquidated as to amount and not contingent as to liability, as required by the Bankruptcy Act,[12] and its argument that the acts of bankruptcy [13] are not supported by the record. A reading of the testimony convinces us that the court was amply justified in its findings and conclusions with respect to each of said matters, and no good purpose will be served by setting out the evidence in this opinion.

Finding no error in the actions of the court below, its judgment is

Affirmed.

12. 11 U.S.C.A. 1952 Ed. § 95, sub. b.

13. Findings of fact 7 through 14 and conclusions of law 4(a) and (b).