### SINCLAIR REFINING CO. et al. v. McELREE.
### No. 11313.

Court of Civil Appeals of Texas. Dallas. June 18, 1932.

Rehearing Denied Sept. 10, 1932.

Cantey, Hanger & McMahon and J. A. Gooch, all of Fort Worth, and Tom Whipple, of Waxahachie, for appellants.

J. T. Spencer, of Waxahachie, for appellee.

LOONEY, J.

This appeal is from an order of the county court of Ellis county overruling appellants' motions to dissolve a temporary injunction. Appellee, W. L. McElree, Jr., sued Sinclair Refining Company, a corporation, L. T. Maybin, John Sholars, and Jonah Galloway, seeking damages and injunctive relief, alleging, in substance, that on January 1, 1932, he was, and for several years had been, occupying a building located in block 7, city of Waxahachie, Tex., under lease, with the right to sublet, using same as an oil filling station, storing, distributing, and marketing the products of refined petroleum, also conducted, on same premises, a garage business, selling tires, tubes, batteries, and all other automobile accessories, repaired cars, tires and tubes, greased and washed automobiles, and did such other things as are usually and ordinarily incident to the garage business; that on the date above named he and Sinclair Refining Company entered into a written contract, whereby appellee leased to said company the filling station part of said building, to be used by the company for the purpose of conducting the business of storing, distributing, and marketing products of refined petroleum. A copy of the contract was attached to and made a part of appellee's petition, the pertinent provisions of which are these: The part of the premises leased to the company is described as "that part and only that part of the following described premises used for and constituting an oil and gasoline service station, and excluding all other parts or por-

tions of said premises (describing same). To have and to hold the above rented and leased premises with the buildings, improvements and fixtures and such furniture, pumps, tanks, air compressors, appliances, pipe lines, unloading racks and unloading facilities as may be located thereon, and all rights, privileges and appurtenances thereunto belonging," etc. The company agreed to pay appellee monthly rentals based upon the amount of gasoline delivered at said station during the month, at the rate of 1½ cents per gallon, not less than $3 per month. The contract provides that the lessee shall have the right and privilege of erecting, placing, constructing, equipping, maintaining, and operating on the demised premises and in connection with said station any and all structures, improvements, appliances, containers, and conveyors of whatsoever kind, on, under, and above the ground, it may desire to use in operating, transacting, carrying on, and conducting on said premises its business of storing, distributing, and marketing products of refined petroleum; also "in the event lessee is unable to obtain all permits and permissions necessary to install, operate and maintain on the leased premises the necessary buildings and equipment for conducting its business as herein provided, or if at any time hereafter lessee is prevented, by operation of law, from using said station and premises for the purposes aforesaid, then and in any of said events lessee may, at its option, cancel this lease and be relieved of any further liability hereunder," and that "lessee shall have the right to assign this lease or sublet the premises or any part thereof or allow third parties to occupy and use the same."

Appellee alleged that defendants were, without legal right, using the leased premises not only to conduct an oil filling station proper, but in addition were conducting therein a business in competition with that conducted by appellee, that is, were selling tires, tubes, batteries, and other automobile accessories; were washing, greasing, and repairing automobiles; that prior thereto appellee had a large and successful garage business, but, owing to said competition, it had been diminished and all but destroyed, to his damage in the sum of $500; that, having no adequate remedy at law, he prayed that defendants "be enjoined and restrained" from conducting any business on said premises other than the oil filling station business, and from engaging in the business of selling tires, tubes, tops, batteries, from repairing cars, washing and greasing cars, etc.; that defendants be cited to answer the petition; and that "on a final hearing said injunction be made perpetual and that he have judgment for his damages in the sum of $500.00, for costs and general relief."

The court granted a temporary writ; the bond required was given; the writ was issued and served; the cause was set for hearing May 13, 1932; defendants were notified, and on said date appeared and filed answers, challenging the legal sufficiency of the petition of appellee to entitle him to the equitable relief sought, on the ground that he had a clear, plain, and adequate remedy at law, and prayed that the writ theretofore issued be dissolved. On the hearing, appellee testified in support of the material allegations of the petition, saying: "I rented that part of my building to the Sinclair Refining Company for a filling station to sell gas, oil and petroleum by-products and for no other purpose"; that defendants, by using the front of the premises (leased for an oil filling station) to conduct the same line of business conducted by appellee, took his trade, his customers not knowing that defendants were conducting a business in competition with him. He testified further: "I told said parties that they did not have any right to engage in the business I was then engaged in and that I wanted them to quit, but they said they were going to make all they could and that every fellow would have to look out for himself, and they would not quit the business in which I was engaged." He further said: Before filing suit "I went to see, at Ft. Worth, Texas, Mr. W. T. Dinkins, District Manager of the Sinclair Refining Company, and he first promised me that he would adjust the same to my satisfaction, but he afterwards stated to me that he would not take any action in the matter. I did not have any legal remedy to make the defendants quit engaging in the business of selling tires, tubes, automobile accessories, greasing and washing cars, patching and vulcanizing tires and tubes, etc., so I made the affidavit for a writ of injunction to restrain said defendants from engaging in any other business than the business for which said building was rented to them."

On the hearing the court overruled appellants' motions to dissolve the temporary writ, and on same day and as a part of the same proceedings rendered what purports to be a final judgment perpetuating the temporary writ, gave judgment against defendants for costs, and ordered execution, etc.

 As the proceedings were had in vacation, the purported final judgment perpetuating the injunction is a nullity and will not be regarded for any purpose. A judge has no power to adjudicate the rights of litigants except at times prescribed by law for holding court unless special authority to do so is conferred by statute. See Aiken v. Carroll, 37 Tex. 73; Hunton v. Nichols, 55 Tex. 224, 225; Accousi v. Stowers (Tex. Civ. App.) 83 S. W. 1104; Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 88 Tex. 468, 27 S. W. 100. However, as appellants perfected appeal from the order overruling their motions to dissolve the temporary writ, that matter is properly before us for review.

3

Appellants contend that the writ should not have issued originally, therefore, on motion, should have been dissolved, because, the lease contract (the basis of the suit) not being restrictive in terms, lessee was privileged to conduct any lawful business upon the premises without violating any right of the lessor.

The general rule on the point is that a provision in a lease authorizing the use of premises for a specific purpose, without restriction as to its use for other purposes, is regarded as permissive simply, and does not have the effect of limiting the use to the specified purpose. San Antonio, etc., v. Brents, 39 Tex. Civ. App. 443, 88 S. W. 368; Fred v. Moseley (Tex. Civ. App.) 146 S. W. 343; 36 C. J. page 84 (§ 710) 3, "Use of Premises, in Absence of Express Stipulations." While the contract under consideration does not expressly restrict the use of the property to the purpose named, yet its language is instinct with that idea, and, when considered in connection with the subject-matter of the contract and the surrounding circumstances, it is obvious that whether or not the intention of the parties was to restrict the use of the premises to the purpose named is a question of fact, to be determined on final trial. That we are permitted to look to the circumstances surrounding the parties at the time the contract was entered into, so as to interpret the language employed, is well settled. The doctrine is stated in 6 R. C. L. page 849, § 239, as follows: "239. *Surrounding Circumstances.*—Courts, in the construction of contracts, look to the language employed, the subject matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. It is therefore an established canon of construction that in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into. General or indefinite terms employed in the contract may be thus explained or restricted as to their meaning and application. And the contract must be so construed as to give it such effect, and none other, as the parties intended at the time it was made. This rule appears to be applicable only where the terms employed are susceptible of more than one meaning. In such case it is the duty of the court not only to regard the nature of the instrument, but also to inform itself of the circumstances which surrounded the parties at the time, so as to interpret the language employed from the standpoint which the parties occupied when they executed the contract. It has been declared, moreover, that the prevailing notions and opinions in the place where the contract was made are presumed to have entered into contemplation of the parties, and if in accordance with law, are not to be discountenanced in construing the contract." Also see 13 C. J. page 542 (§ 514) 20.

Appellants contend also that appellee had a full, complete and adequate remedy at law, in that it was not made to appear that they were not able to respond in damages for the alleged wrongs committed. To this proposition we cannot assent. Even if recovery of damages for the alleged wrongs could be considered adequate in a legal sense, yet, the alleged injurious acts being continuous or constantly repeated, recovery of such damages as could be measured under approved rules would fall short of being full and complete relief. The doctrine even under principles of equity, uninfluenced by statutory enactment, is stated in 32 C. J. § 36, p. 56, as follows: "As a general rule, where an injury committed by one against another is continuous or is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction. The fact that an injured person has the right of successive actions for the continuance of the wrong does not make it an adequate remedy at law which bars the jurisdiction of a court of equity to grant an injunction to restrain the continuance of the injury." Particularly with reference to the relation of landlord and tenant the same doctrine is announced in 16 R. C. L. § 232, p. 740, as follows: "The landlord's right to injunctive relief is not, however, restricted to acts of his tenant which may constitute legal waste, but it is a general rule that whenever, under the terms of a lease, the lessee is restricted to the use of the demised premises in a particular manner or for a specified purpose, a violation of the covenant by the use of the premises in a different manner or for another purpose affords ground for the interposition of equity by injunction. And in all such cases a court of equity is regarded as the appropriate forum for administering relief, the jurisdiction being based in part upon principles analogous to those which govern the equitable remedy of specific performance, and in part upon the necessity of preventing a constantly recurring grievance resulting from the continuous breach of the covenant, which cannot be adequately compensated by an action for damages." However, the rule at equity is enlarged in this state by statute. Subdivision 1, art. 4642 (4643) (2989), R. S. 1925, provides for the issuance of injunctions "where the applicant is entitled to the relief demanded and such relief or any part thereof requires the restraint of some act prejudicial to him." We think the case comes within the meaning of this provision and that neither at

equity nor under the statute did appellee's right to injunctive relief depend upon a showing that there existed no adequate remedy at law. See Republic Ins. Co. v. O'Donnell (Tex. Civ. App.) 289 S. W. 1064, and authorities cited.

Appellants make the further contention that, as appellee failed to ask for a temporary writ, the court erred in granting same, citing Hoskins v. Cauble (Tex. Civ. App.) 198 S. W. 629, as authority for the proposition.

■ This contention is overruled. We think the prayer of the petition sufficiently. comprehensive to include both temporary and permanent injunctive relief. After alleging his cause of action, appellee prayed "that they (defendants) * * * be enjoined and restrained from engaging, etc., * * * that they be specially enjoined and restrained from engaging in the business of, etc., * * * that defendants be cited to answer this petition and that on final hearing said injunction be made perpetual and that he have judgment for his damages, etc."

Finding no reversible error, the order of the trial court is affirmed.

Affirmed.