FIDELITY–PHENIX FIRE INSURANCE COMPANY et al., Appellants,

v.

FARM AIR SERVICE, Inc., Appellee.

No. 16979.

United States Court of Appeals
Fifth Circuit.

April 30, 1958.

Rehearing Denied June 11, 1958.

Quentin Bates, Houston, Tex., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellants.

Clyde E. Barnes, Robert E. Barnes, Beaumont, Tex., Barnes & Barnes, Beaumont, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

We are asked to reverse the judgment of the court below because it admitted oral evidence of negotiations between the parties to two fire insurance contracts covering the contents of an airplane hangar to aid the jury in reaching its verdict on the question whether the parties intended that the policies cover an airplane destroyed by fire. Appellee, Farm Air Service, Inc., sued appellants, Fidelity-Phenix Fire Insurance Company and New York Underwriters Insurance Company, to recover the value of an airplane destroyed by fire on the insured premises. Each appellant had issued a policy for $5,000.00 covering "All Contents and Adjacent To Building Within 200′ in the one story compo. roof, I.C.M. construction, S/S Highway 90, 1 mile east of town, Nome, Jefferson County, Texas, occupancy, airplane hangar." [1]

The companies defended on the ground that the aircraft was not covered by the policies since aircraft were specifically excluded from coverage.[2] Appellee took the position that it was the intent of

---

1. It was undisputed that the plane was about 125 feet from the hangar and well within the circumambient area covered, and its location at the time of the fire is not a point of issue.

2. The answer quotes from the policies this provision:

"Excepted property: This policy shall not cover accounts, money, currency, securities, deeds, or evidences of debt; nor, unless specifically named hereon, cloth awnings, records and books of record (except for their physical value in blank), manuscripts, bullion, animals, motor vehicles, or aircraft."

the parties, gleaned from the entire contracts and under the undisputed evidence and admissions, that the destroyed airplane was covered by the policies; or, in any event, the provisions of the policies were contradictory, ambiguous or inharmonious, and that the court below properly admitted oral evidence of the negotiations between the parties to aid the jury in determining their intent. It was admitted in the pleadings that the policies were issued March 30, 1955 and premiums paid for one year, that the plane was destroyed May 24, 1955, and proof of loss and claims seasonably made, and that prior to June 1st, appellants had investigated the loss and denied the claims.

The trial court admitted oral evidence describing the circumstances surrounding the parties at the time the policies were issued and of their negotiations preceding their issue, and submitted the case to the jury which returned a verdict for the appellee upon which the judgment was entered, from which appellants prosecute this appeal.

█ A court called upon to determine the meaning of written contracts such as those here involved looks primarily to the language of the contracts after first placing itself as nearly as possible in the position of the parties to them at the time of their execution. 12 Am.Jur., Contracts, Par. 247–249; Sinclair Refining Co. v. McElree, Tex.Civ.App.1932, 52 S.W.2d 679, 681; Shook v. Parton, Tex.Civ.App.1948, 211 S.W.2d 368, 371. The situation of the parties was developed by the evidence without objection and virtually without dispute.

Insured was in the business of conducting dusting and spraying operations for farmers, and it owned between six and nine small airplanes which were kept in its hangar or tied down close by when not in use. The hangar was steel construction with metal sides and concrete floor, and it customarily held about seven planes. It had been insured against fire with other insurers for a considerable period.

Insured decided to explore the possibility of carrying insurance on its planes to cover crashes and fires resulting therefrom, and it asked appellants' agents in Beaumont, Texas to come out and discuss this problem with them. The agents were promptly advised that the premiums for such insurance were prohibitively high, and they thereupon solicited the insured to purchase insurance on the contents of the hangar including the surrounding area. The issuance of the two policies followed these discussions.

A construction of these policies in the light of these unchallenged facts would lead to the conclusion that the parties intended that aircraft should be included in the phrase "all contents" of the hangar. Any other conclusion would be strained and illogical. Insured had initiated the negotiations solely with the view of protecting themselves against loss of their planes. Appellants take the position that the contents insured included only tools, machinery and airplane parts. The undisputed proof showed that these items had a total value of about $2,000.00, about one-fifth of the total amount of the insurance applied for and issued. Appellants argue also that it is manifest that the parties did not insure the planes because they had a total valuation of more than four times the amount of insurance carried on the contents. Appellee counters this argument by showing that danger of a general conflagration of contents of the hangar while it was closed and unattended was infinitesimal in view of the metal construction, and that experience had shown that such losses were customarily confined to one or two aircraft which were caught in fires started from welding operations in close proximity to combustible fluids.

Appellants' general argument is weakened moreover by certain writings placed in evidence with their consent. The first was a letter from the state agent of one of appellants to its Beaumont representatives dated May 9, 1955 expressing doubt as to whether the policy recently issued did not, by its terms, cover air-

craft.[3] This letter was written two weeks before the fire, but the insurance agent at Beaumont did not transmit any endorsement to appellee until about a week after the fire, at which time the loss had been reported and investigated and payment refused. Each of the endorsements then sent to assured was headed "General *Change* Endorsement," and, after providing that airplanes in or adjacent to the building should not be covered under the policy, it concluded with the typewritten words, "All other terms and conditions remain *unchanged.*" (Emphasis supplied in each instance.) These writings lend weight to the contention that the state agent for one of appellants realized that the policy terms were so ambiguous that he sought to have a "change" made before any loss should occur. The unexplained delay of about three weeks on the part of the local agent who wrote the policies in sending the endorsements to assured give credit to the argument that the agent was reluctant to put himself behind such an endorsement because he knew that it did not faithfully record the facts.

Under the general rule that insurance policies are construed against the insurer;[4] that typewritten portions of the policy are given preference over printed portions and control in event of conflict between the two,[5] and the rule that "the letter of the contract is to be controlled by its spirit and purpose. The terms employed are servants, and not masters, of an intent * * *" 12 Am.Jur., Contracts, § 236, p. 760; there is considerable weight to the argument that appellee was entitled to recover under the evidence which was introduced without objection.

The argument before us, however, has been pitched around the question whether the court below properly admitted evidence of the negotiations between the parties to aid the jury in determining their intent as expressed in the written contracts. Appellants based their motion for a directed verdict, made when all of the evidence was in, and their motion for

---

**3.** This letter written by the state agent of New York Underwriters to its Beaumont agents reads in part as follows: "This policy covers contents, which is a pretty all-embracing term, but the printed conditions of the policy specifically exclude any coverage on airplanes. As there are airplanes in the building from time to time, we think it would be advisable to attach an endorsement to the effect that it is understood and agreed that our policy does not cover airplanes. Such an endorsement would eliminate the possibility of any misunderstanding of the contract by your assured now rather than after a loss."

**4.** The rule is adverted to in graphic language by this Court in Royal Exchange Assurance of London v. Thrower, 1917, 246 F. 768, 771: "The language of an insurance policy is the language of the company. It is prolix, involved, conflicting. Important provisions, printed in small type, are rarely read by the policy holders. If read, the policy holder would know little more about the contract entered into. If the companies desire clearness, there would appear to be no good reason why it should not be attained; and, in its absence, the courts will give

that construction which will, as nearly as may be, give effect to all parts of the instrument and bring results as nearly approximating equity as possible.

"The insurance companies have shown no lack of capacity in so framing language as to protect themselves, * * *"

**5.** Hedick v. Lone Star Steel Co., Tex.Civ. App.1955, 277 S.W.2d 925, 929; Frey & Co. v. W. D. Lacy Feed Co., Tex.Civ. App.1954, 272 S.W.2d 765, writ dismissed, and Lowry & Co. v. KTRM, Inc., Tex.Civ.App.1951, 239 S.W.2d 898. This quotation is taken from the last case at page 900:

"Where a printed form is used in drawing a contract, and an ambiguity results from apparent inconsistencies between written or typewritten portions and printed portions, the written or typewritten words will control, the reason being that they are the immediate language and terms selected by the parties themselves as setting forth their intentions, whereas the printed form is intended for general use without reference to particular objects and aims. 10 Tex. Juris. 312 and many Texas cases cited there."

judgment notwithstanding the verdict on their contention that the court below committed error in admitting the evidence because, as they contend, the contracts show on their face that it was not intended that aircraft should be included in the coverage.

We do not agree with this position of appellants. The question was raised when insured's president was on the stand and was asked concerning the negotiations between him and the insurance agents following their inability to agree upon the issuance of policies covering crash fires.[6] Following the objection quoted in the Footnote, insured's president proceeded to testify that he and the representatives of the insurance companies, standing on the ground, agreed that the policies would be issued to cover the airplanes while in the hangar or while at rest within two hundred feet of it. Without further objection appellants, omitting to make a motion to exclude the evidence or for a directed verdict when appellee rested its case, proceeded to put on their two witnesses to contradict that offered by insured and to prove that the parties agreed that the coverage would include only the tools and machinery and airplane parts in and around the hangar.

The court did not advert to this testimony in its oral charge, and the record contains no request by either party for an instruction with regard to it and neither party excepted to the charge as

given. From the above it seems that the court did not overrule appellants' objection to this testimony, but merely reserved its ruling while it was listening to the oral testimony. Both parties seem to have ignored this feature of the case thereafter, and it is doubtful if appellants have reserved any exception upon which a reversal could be predicated.

■ But appellee does not argue this point, being content to take the position that the oral testimony was admissible. We agree. Before we could hold with appellants that appellee was denied recovery as a matter of law we would have to be convinced that the insurance policies expressed an agreement which was clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout. Major Appliance Company, Inc., v. Hupp Corporation, 5 Cir., 1958, 254 F.2d 503; Baker v. Nason, 5 Cir., 1956, 236 F.2d 483, 491; Petroleum Financial Corp. v. Cockburn, 5 Cir., 1957, 241 F.2d 312, 317 et seq.; Universal C.I.T. Credit Corp. v. Daniel, 1951, 150 Tex. 513, 243 S.W.2d 154, 157; and the Texas cases listed in Footnote 5, supra.

■ The writings before us do not, in our opinion, meet this test. Appellants' representatives wrote into the face of these policies that the companies insured appellee on *all contents* of the airplane hangar and the adjacent area.[7] The most that can be argued by appellants is that the conditonal exclusion of aircraft clashes with their own chosen

6. "Q. Then, when you saw him [meaning the agent for the insurance companies] again about this insurance, what proposition did he make to you or you to him? A. Well, he said that * * *

"Mr. Bates: May it please the Court, for the record, I would like to object to any oral testimony at this time that seeks to vary the terms of these insurance policies. It is our position that the terms are clear and unambiguous and that any conversation between the parties prior to the execution and issuance of the policies in question is not admissible.

"The Court: Well, he asked him what proposition was made by Mr. Mayer to him or what proposition he made to

Mr. Mayer. I don't know whether that would tend to vary the terms of the written . instruments or not. . . . I am going to let him answer the question and I can determine then how it would tend to vary the language of this contract."

7. It is noteworthy that, under the capitalized inscription, "Description of Property," appears these words in small print: "See definitions of Building, Household Goods, Stock, Furniture, Fixtures, and/or Machinery, and Contents," thus inviting the insured to read the portions of the policies catalogued, but saying nothing about exclusions and exceptions.

words which they wrote into the face of the policy.

"All" was as comprehensive a term as could have been used, connoting such concepts as the whole quantity of, the entire number of, any and every, the total and entire contents. The premises contracted about were dedicated entirely to aircraft, their repair, handling, storage. If another portion of the contract excluded aircraft from the concept under which the parties were palpably dealing, the least that can be said of such a portion is that it was inharmonious with and conflicting with the typewritten portion. The fact is that the "contents" of the insured premises were not itemized and some extrinsic evidence was absolutely necessary to establish what the parties did intend by the use of this term.

The court below and the jury heard the testimony of the witnesses for the respective parties. A reading of it will demonstrate that appellee's witness was direct, frank and convincing, while those of appellants were evasive, argumentative and unconvincing. We do not think that, under the circumstances disclosed by this record, the court committed any error in permitting the evidence to be placed before the jury.[8] The verdict of the jury was amply justified and for the reasons stated the judgment entered thereon is

Affirmed.

TUTTLE, Circuit Judge (dissenting).

I dissent. I think the holding of the court makes impossible a general exclusion provision in a fire insurance policy. Here, in plain unambiguous terms the policy stated—in printing, to be sure, but that only testifies to the generality of its effect—that unless "specifically waived" aircraft shall not be covered. Clearly, therefore, every term used to describe the covered property must be limited by that exclusion unless aircraft were specifically named. Here none was. I would reverse on the ground that the policy was plain and unambiguous on its face and the evidence required a judgment for the defendants.

Rehearing denied: TUTTLE, Circuit Judge, dissenting.

---

8. In addition to the foregoing authorities see Navaho Production Corp. v. Panhandle Eastern Pipeline Co., 5 Cir., 1942, 132 F.2d 1, 3; 20 Am.Jur., Evidence, § 1147, pp. 909 et seq.; Leonard v. Prater, Tex.Com.App., 36 S.W.2d 216, 86 A.L.R. 499; Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940.