GULF ATLANTIC TOWING CORPORA-
TION, Appellant,

v.

DICKERSON, INC., Appellee.

MIAMI TOWING COMPANY and Gulf
Atlantic Towing Corporation,
Appellants,

v.

DICKERSON, INC., Appellee.

Nos. 17532, 17533.

United States Court of Appeals
Fifth Circuit.

Oct. 27, 1959.

Rehearings Denied Dec. 15, 1959.

Edward McCarthy, Jacksonville, Fla., McCarthy, Lane & Adams, Jacksonville, Fla., of counsel, for appellants.

Chester Bedell, C. Harris Dittmar, Jacksonville, Fla., Bedell & Bedell, Jacksonville, Fla., of counsel, for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

On February 24, 1956, Gulf Atlantic Towing Corporation (GATCO) and Dickerson, Inc., a road contractor, entered into a written contract under which Gatco agreed to haul between 100,000 and 125,000 cubic yards of stone between a point on Lake Okeechobee and one on the St. Lucie River. Dickerson was to pay 40¢ per cubic yard for the haulage. Both parties agree that the only significant parts of this contract are the following:

"1. Gatco Agrees:

"A. To transport by barges between One Hundred Thousand (100,-000) and One Hundred Twenty-five Thousand (125,000) cubic yards of limestone rock from a point approximately three (3) miles west of Bel Glade, Florida on Lake Okeechobee to a point approximately one-half mile east of St. Lucie Locks about seven (7) miles west of Stuart, Florida.

"B. To provide for such undertaking a minimum of two tugs and four barges. The barges will be such as can be unloaded by regular power crane with clam shell type bucket of one and one-half (1½) cubic yards capacity and shall be provided with protective mats of timbers not less than three by twelve (3 x 12) of sufficient dimensions to allow the unloading equipment to work from the same. To furnish a competent superintendent who shall devote his full time to expediting this project during the period of these presents.

\* \* \* \* \* \*

"E. To operate the equipment herein described twenty-four (24) hours a day, seven (7) days each calendar week until the entire quantity of material is moved."

"2. Dickerson Agrees:

"A. To pay Gatco forty (40¢) cents for each cubic yard of limestone rock moved by Gatco from the loading docks near Bel Glade to the barge berths and/or unloading docks, provided by Dickerson, just east of St. Lucie Locks, payment to be made by the 10th of the month for the quantities moved during the preceding month. The quantities are to be determined by truck count, Dickerson to furnish Gatco with copies of quarry delivery tickets."

On May 26, 1956, a supplemental written agreement was entered into between the parties. The essential part of this agreement, in the form of a letter from Dickerson to Gatco, provided:

"This will confirm our conference of the 14th.

"In consideration of your providing and maintaining on the project described in the contract dated February 24, 1956 between Gulf Atlantic Towing Corporation and Dickerson, Inc., the tugboat Gatco Georgia, or a comparable substitute in addition to the tugs and barges which you now have on such undertaking Dickerson, Inc. will thereafter pay sixty (60¢) cents per cubic yard instead of forty (40¢) cents per cubic yard as provided in subparagraph (a) of Paragraph 2 of said contract. Dickerson, Inc. will be permitted to continue or discontinue the use on said project of the tugboat Sampson and the Barge No. 1000 or comparable substitutes at its option.

"The increased rate per cubic yard referred to herein is to commence with the first load of limestone rock moved from the loading docks on the Lake Okeechobee terminus by the Gatco Georgia, or its comparable substitute."

Alleging failure to perform in accordance with this written contract as amended, Dickerson brought suit for damages. In another proceeding, Miami Towing Company, to which Gatco had assigned part of the contract with Dickerson's consent, filed suit against Dickerson for payment in accordance with the terms of the same written contract.

The trial court found Gatco and Miami Towing Company in default for failing to carry out the terms of their contract,

and after allowing credits for amounts not paid for the haulage, assessed net damages of $44,147.96, including interest against Gatco.

The controlling question presented by this appeal is whether in determining the standard of performance imposed on Gatco the court could, as it did, consider negotiations leading up to the signing of the contract and other circumstances surrounding the contractual obligations of Dickerson with third parties which were neither expressly incorporated, nor referred to, in the contracts sued upon.

If the trial court could legally consider these extraneous matters it is clear that the evidence supported (although contrary inferences might well have been drawn from some of the facts) the following findings of fact by the trial court:

> "5. Although the writing dated February 24, 1956 did not specify the period of time within which Gatco was to complete the transportation of the limestone rock, at the time the agreement was negotiated and executed, Gatco had been informed by plaintiff and knew that the rock to be transported was that required for the performance of plaintiff's contract with the Florida State Turnpike Authority, that plaintiff had only 150 calendar days after February 20, 1956, to complete its contract with the Turnpike Authority, that all the rock would have to be transported to the Stuart unloading dock at least thirty days before the expiration of the performance period in order for plaintiff to complete on time its contract with the Turnpike Authority, and that plaintiff was gearing its operations to handle 2,000 cubic yards of rock per day. Gatco represented to plaintiff that it could and would transport the rock in the quantities and within the time required by plaintiff's needs under plaintiff's contract with the Turnpike Authority. The agreement of February 20, 1956, was intended and understood by both parties thereto to be a contract for the transportation by Gatco of the rock in the quantities and within the time known by both parties to be required under plaintiff's contract with the Turnpike Authority.

> "6. * * * Soon after Gatco commenced transporting the rock, it became apparent that the minimum equipment required by the agreement of February 24, 1956 was insufficient to transport the rock in the quantities required and within the time available to perform the job contemplated by Gatco and plaintiff, but Gatco failed to put additional equipment on the job."

These findings obviously could not be supported if the obligation of the towing company was measured solely by the undertaking expressed in the writings between the parties. This is, of course, emphasized by the part of finding No. 6, "the minimum equipment *required by the agreement of February 24, 1956,* was insufficient to transport the rock in the quantities required and within the time available to perform the job contemplated by Gatco and plaintiff, but Gatco failed to put additional equipment on the job." (Italics added.) It is for the failure to put equipment on the job additional to the minimum "required by the agreement" sued on by Dickerson that gave rise to the most substantial part of the damages fixed by the court, for the court held that it was Gatco's obligation to move the full requirement of some 111,000 cubic yards of rock furnished by Dickerson at the loading ramp by June 15, 1956, because this was the date which the court found the parties "contemplated" when they signed the agreement.

The parties are not in controversy as to the basic principle of law which the courts must apply in a case such as this. In fact both briefs cite the same Florida and United States Supreme Court cases for the statement of the rule. In Ramey v. Koons, 5 Cir., 230 F.2d 802, at page 804, a Florida diversity case, this Court said:

> "The Supreme Court of Florida has had occasion to declare the gen-

eral rule. It has held that when the parties have reduced their agreement to writing the intent so expressed is controlling and all other utterances are immaterial with respect to the matters embraced. [Milton v. Burton, 79 Fla. 266, 84 So. 147]."

Of course, in order for the rule to apply, it must be found that "the written instrument appears on its face to express an agreement complete in all essential terms," Jones, Commentaries on Evidence, Vol. 3, p. 2695, § 1482, as quoted in Ramey v. Koons, supra.

■ Both parties also refer us to the case of Seitz v. Brewers' Refrigerating Machine Co., 141 U.S. 510, at page 517, 12 S.Ct. 46, at page 48, 35 L.Ed. 837, which says:

"* * * when the writing itself upon its face is couched in such terms as import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing."

The acceptance by both parties of these principles of law as controlling, thus presents the question whether the agreement of February 26th was on its face a contract having a readily ascertainable meaning and capable of enforcement without resort to clarifying or explanatory evidence. If it was, then it was error for the trial court to increase the obligations of either party by reference to what the parties "contemplated" or "intended" or the "purpose" for which the contract was made.

■ We conclude that the agreement was complete in itself and was not, therefore, to be added to or modified by the oral testimony showing that instead of agreeing that for 40¢ a yard, Gatco would operate a minimum of two tugs and barges "such as can be unloaded by regular power crane with clam shell type bucket of one and one-half (1½) cubic yards capacity and * * * provided

with protective mats or timber * * * to allow the unloading equipment to work from the same" with a full time competent superintendent devoting his full time to expediting the project, which was to operate 24 hours a day, seven days each week "until the entire quantity of material (100,000 to 125,000 yards) is moved," Gatco undertook to do the things just stated on or before June 15, 1956.

Appellee undertakes to justify the introduction of testimony concerning the surrounding circumstances, including preliminary negotiations by asserting that the contract was not a complete agreement; that the working of the agreement "leaves 'uncertainty as to the object or extent of the engagement'" in the following three particulars:

1. "Although the wording of the agreement obligates Gatco to transport by barges 'between One Hundred Thousand (100,000) and One Hundred Twenty-five Thousand (125,000) cubic yards of limestone rock,' it does not define the time within which Gatco is to complete performance of this obligation."

2. "Although the wording of the agreement obligates Dickerson to load and unload 'material on barges,' it does not define the extent of Dickerson's obligation in this respect. The wording of the agreement does not define the time within which Dickerson is obligated to complete its loading or unloading; it does not define what the capacity of Dickerson's loading and unloading facilities shall be; and it does not define how Dickerson's duties shall be coordinated with Gatco's duties under the contract."

3. "Although the working of the agreement obligates Gatco to furnish a 'minimum' of two tugs and four barges for the project, it does not define the maximum amount of equipment which Gatco is obligated to furnish. Nor does it define the factors controlling the determination of the exact amount of equipment

which Gatco is obligated to furnish. Moreover, it contains no description of the tugs and barges to be furnished, although individual tugs and barges vary greatly in size and capacity."

We think that the contract does not lack completeness and exactness in any of the respects charged. We think the trial court should have construed this writing as an undertaking by Gatco to move as much as 125,000 cubic yards of rock as tendered to it at ramps provided by Dickerson; that it was entitled to have as much as 100,000 yards to haul; that it would dedicate to the performance of this haulage such equipment as it wished, but it would guarantee the continuous 24-hour a day operation of a minimum of two tugs and four barges of sufficient size to permit their being loaded and unloaded by the use of a power crane using a 1½ cubic yard clam shell type of bucket, which crane would be operated from on board the barges, which must therefore be large enough to accommodate such equipment; that a competent superintendent should be furnished on a full time basis to expedite the shipments; that for each yard of rock thus hauled Dickerson was obligated to pay 40¢; both Dickerson and Gatco were required to carry on the operation on a 24-hour a day basis.

This statement of what we construe the contract to mean answers the contention of appellee quoted above. Dickerson was willing to fix the time of performance as that which would be necessary to permit the hauling of the rock tendered by it to Gatco by the use of two tugs and four barges operating continuously. If, as was actually the case, Gatco furnished additional tugs and barges which were used to haul rock, Gatco would of course shorten the overall time required to haul the total amount of rock tendered. If, by the use of the guaranteed number, two tugs and four barges continuously, twenty-four hours a day, seven days a week, it took longer than Dickerson hoped for, then no liability arose on the part of Gatco from that fact.

■ The complaint alleged several breaches of the contract *as written* in addition to the failure to complete the contract by June 15th. To the extent, if any, that Dickerson suffered damages because Gatco failed to furnish a minimum of four barges and two tugs on a continuous basis or because of a failure to furnish a competent superintendent to devote his full time to expediting the project, such damages, if proved, could be recovered by Dickerson. The court found breaches in such terms of the contract but did not separate the damages resulting therefrom from the damages allowed on the erroneous theory that Gatco was liable for all expenses of Dickerson after June 15, 1956.

■ In determining whether Gatco performed its undertaking to operate two tugs and four barges continually, Gatco could not be held liable for temporary delays incident to normal operation, such as repairs, groundings, other emergencies in the management of the vessels and the like, nor did the full time of a competent superintendent comprehend more than a normal work day for the person assigned to this duty.

There remains to be considered the effect of the supplementary letter of May 26, 1956. Dickerson agrees that during the time the Georgia was operating, Gatco was entitled to 60¢ per yard payment. Dickerson contends however that when the Georgia was removed for reasons suitable to Gatco and the Florida was substituted temporarily, the 60¢ rate no longer applied; whereas Gatco contends the 60¢ rate applied to all the haulage after the Georgia was first used. On this substantial issue we are bound to agree with Dickerson.

■ Although we think the trial court might well have found the Florida "comparable" to the Georgia during the six days she was in use, this determination that she was not comparable within the meaning of the supplementary contract was a factual determination and we do not find it clearly erroneous. The agreement of Dickerson to pay 60¢ in consideration of Gatco "providing and

maintaining" the Georgia or a comparable substitute on the project was an agreement dependent upon Gatco's performance. When this condition was not complied with the promise failed, and the original provision as to price again obtained.

Appellant complains that the trial court found that Gatco was entitled to payment for hauling only 111,672 cubic yards instead of 114,000, claimed by Gatco to have been hauled by it. The court resolved this conflict by taking as correct Gatco's exhibit showing the detailed shipment per barge, whereas Gatco claims the court should have taken as correct an admission against interest of Dickerson's witness Cowell that would have warranted a finding that 114,000 yards had been carried. Since the case must be reconsidered on the element of damages, we think this matter should be expressly resolved by the trial court on a rehearing.

Concluding, as we do, that the court imposed a time of performance of the contract not agreed to by the parties, and consequently adjudged damages for Gatco's failure to comply with this standard, the judgment in case No. 17,532 must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

In case No. 17,533, it appears that the trial court dismissed the complaint on the ground that all issues raised therein had been resolved in No. 17,532. Inasmuch as we have now reversed the judgment in the latter case, it is also necessary to set aside the judgment in No. 17,-533, and remand this cause for further and not inconsistent proceedings.

Both judgments are reversed and remanded.

CAMERON, Circuit Judge (dissenting).

The court below sitting without jury, in my opinion, tried this case with unusual skill and care, setting forth in detail its findings of fact and conclusions of law, which, to my mind, are amply supported by the evidence. I think, therefore, that we should affirm its judgment.

The court below set about to discover, as was its duty, the intent of the parties to this contract. Since the parties had executed writings, it followed the standard set up by this Court as applicable in such cases:[1]

"It is the court's duty, if it can, to determine the intent of the parties from the writing they executed, construed from the standpoint of the parties, circumstanced as they were, 12 Am.Jur., Contracts, § 227, § 229 and § 247 et seq."

The court found also, as anyone would find, it seems to me, from examining the writings involved in this action, that the writings were "not sufficiently clear, definite, explicit and harmonious"[2] to enable it to discover the intent of the parties "without resort to the aids conventionally employed to assist in arriving at the intention of the parties to a written instrument."

The contract originally executed between the parties was indefinite in the quantity of limestone rock to be transported, the amount ranging between 100,000 and 125,000 cubic yards; the point where it was to be picked up was indefinite, as was the point at which it was to be unloaded. No time of delivery was specified, at least by any direct words. The majority evidently assumes that the time element was spelled out by the contract terms requiring Gatco to furnish for the undertaking "a minimum of two tugs and four barges." That did not exempt Gatco from furnishing a larger number of tugs and barges. It is clear, moreover, that the size of the tugs and barges was not fixed. All of these provisions of the writing made it plain that the written language was not "clear,

1. Major Appliance Co. v. Hupp Corp., 5 Cir., 1958, 254 F.2d 503, 505. And see Baker v. Nason, 5 Cir., 1956, 236 F.2d 483; Petroleum Financial Corp. v. Cockburn, 5 Cir., 1957, 241 F.2d 312; Fidelity-Phenix Fire Ins. Co. v. Farm Air Service Inc., 5 Cir., 1958, 255 F.2d 658.

2. Major Appliance Co. v. Hupp Corp., supra, 254 F.2d at page 507.

definite, explicit and harmonious." The court was, therefore, at liberty, indeed was required, to resort to all of the aids normally looked to by courts for assistance in determining the meaning of words which are not clear and explicit.

The conclusion reached by the court below was amply justified, it seems to me, if it looked alone to the circumstances surrounding the parties at the time the writing was executed and the setting in which the execution took place. That, every court ought to do in construing every contract. We expressed such a view many years ago in T. B. Walker Mfg. Co. v. Swift & Co., 5 Cir., 1912, 200 F. 529, 531. Under facts quite similar to those here, we stated the rule thus:

"The questions presented by these contentions may not be entirely free from doubt if, in the consideration of the contract, we were confined to what appears in the writing. We are not so confined. We look, not only to the language employed, but to the subject-matter, the course of dealing between the parties, and all the relevant surrounding circumstances. The court is not shut out from the light which the parties enjoyed when the contract was made. In determining the meaning of the words used and the intention of the parties, we place ourselves in the situation of the parties, so as to view the circumstances as they viewed them. In that way we endeavor to get at the correct application of the language to the things described and at the real intention of the parties." [3]

With respect to the extremely important time element the court below made this finding based upon the tests and aids approved in the foregoing quotation and citations:

"Although the writing dated February 24, 1956 did not specify the period of time within which Gatco was to complete the transportation of the limestone rock, at the time the agreement was negotiated and executed, Gatco had been informed by plaintiff and knew that the rock to be transported was that required for the performance of plaintiff's contract with the Florida State Turnpike Authority, that plaintiff had only 150 calendar days after February 20, 1956 to complete its contract with the Turnpike Authority, that all the rock would have to be transported to the Stuart unloading dock at least thirty days before the expiration of the performance period in order for plaintiff to complete on time its contract with the Turnpike Authority, and that plaintiff was gearing its operations to handle 2,000 cubic yards of rock per day. Gatco represented to plaintiff that it could and would transport the rock in the quantities and within the time required by plaintiff's needs under plaintiff's contract with the Turnpike Authority. The agreement of February 20, 1956, was intended and understood by both parties thereto to be a contract for the transportation by Gatco of the rock in the quantities and within the time known by both parties to be required under plaintiff's contract with the Turnpike Authority."

The trial court found also that Gatco's performance caused numerous interruptions and delays in supplying the limestone rock; that it threatened to abandon all attempts to perform under its contract; that Dickerson obtained barges and other facilities which Gatco claimed it could not come by; that Gatco did not operate its equipment full time, but

**3.** This general rule is well stated in 12 Am. Jur., Contracts, § 247, pp. 784–786, and the text is based in part on two Florida decisions, Heisler v. Marceau, 95 Fla. 135, 116 So. 447, and Holmes v. Kilgore, 89 Fla. 194, 103 So. 825. Cited also are a large number of cases from the Supreme Court of the United States and the Courts of Appeal of the several circuits, as well as cases from thirty-one states. And cf. also 20 Am.Jur., Evidence, § 1159, pp. 1011 et seq.

spasmodically; that Dickerson increased the unit payment for the rock and did everything possible to induce Gatco to perform what was clearly its obligation. The damages sustained by Dickerson were itemized by the court below, which sat through a very long trial, hearing many witnesses and considering many exhibits. Its findings were, in my opinion, clearly correct and not clearly erroneous. I dissent, therefore, from the opinion rendered by this Court reversing the action of the trial court.