# NO. 12-16-00129-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *G-M WATER SUPPLY CORPORATION, APPELLANT* | § | *APPEAL FROM THE 1ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CITY OF HEMPHILL, TEXAS, APPELLEE* | § | *SABINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

G-M Water Supply Corporation appeals the trial court's temporary injunction requiring it to pay the full amount of the City of Hemphill's monthly invoices directly to the City until otherwise ordered. G-M raises three issues in this interlocutory appeal. We dissolve the temporary injunction and remand this case to the trial court for further proceedings.

## BACKGROUND

G-M is a nonprofit water supply company. Pursuant to a longstanding relationship, G-M purchases water from the City. In their most recent agreement, executed in 2011, G-M must purchase a minimum amount of water based on an annually adjusted rate determined by the City. Essentially, the City assesses the rate based on a projection of its annual costs to produce water divided by the quantity of treated water estimated to be produced that year, expressed in a dollar amount per 1,000 gallons.[1]

G-M recently completed construction of its own water treatment facility and began taking less water from the City under the contract. This action led to a much higher adjusted rate for

---

[1] Other than charging for administrative costs, the City does not include profit in its calculation. Since the rate is based on projections and estimates, the contract requires an independent audit at the end of each year, and any overpayment or underpayments by G-M during that year are accounted for in the following year's rate calculation.

2015-16 because, according to the City, its costs are fixed, and since G-M takes less water, the City's cost per gallon of water produced dramatically increased. In 2014-15, the City charged G-M $2.8333 per 1,000 gallons of water, but raised the rate in 2015-16 to $5.2137 per 1,000 gallons of water. G-M disputed the City's cost assumptions in computing the rate, calculated its own rate of $3.6492 per 1,000 gallons of water, and paid the City based on that rate for each monthly invoice. After negotiations proved unsuccessful, the City filed suit against G-M, alleging that it breached their contract by failing to pay the invoices at the contract rate set by the City.

The City filed an application for temporary injunction requesting that G-M pay the accrued arrearages into the trial court's registry, along with the full amount of future monthly invoices calculated at the $5.2137 per 1,000 gallon rate pending a resolution on the merits. After a hearing, the trial court granted the temporary injunction, concluding that the City will probably prevail on the merits because G-M has breached and intends to continue to breach the terms of the contract by failing to make the full payments invoiced by the City. Consequently, the trial court ordered that G-M deposit $87,663.11 into the registry of the court, which represented the amount of arrearages up until the time the injunction issued. Additionally, the trial court ordered that G-M pay all future invoices at the full $5.2137 per 1,000 gallon rate directly to the City until otherwise ordered. In its order granting the temporary injunction, the trial court found that

> unless this Court grants the requested injunctive relief, [the City] will be without an adequate remedy at law in that [it] will have to file suit against [G-M] every month to recover the amounts due under the terms of the parties' contract, in that [G-M's] failure to make full payments has adversely impacted [the City's] fiscal status, and in that [the City] may not be able to recover the full amount of a money judgment following trial on the merits.

G-M filed this interlocutory appeal challenging the trial court's temporary injunction. Because some Texas courts, including this Court, have held that an order to deposit funds into the trial court's registry is not properly characterized as an appealable temporary injunction, G-M filed a separate petition for writ of mandamus to resolve the issue pertaining to the registry funds.[2] This interlocutory appeal relates only to the trial court's order that G-M pay all future invoices directly to the City at the full $5.2137 per 1,000 gallon rate until otherwise ordered.

---

[2] *See, e.g., **Zhao v. XO Energy LLC***, 493 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2016, no pet.); ***Structured Capital Res. Corp. v. Arctic Cold Storage, LLC***, 237 S.W.3d 890, 894 (Tex. App.—Tyler 2007, no pet.).

## TEMPORARY INJUNCTION

In its second issue, G-M contends that the trial court abused its discretion by issuing the temporary injunction because the evidence does not support a finding of a probable, imminent, and irreparable injury.

## Standard of Review

In an interlocutory appeal from a ruling on an application for a temporary injunction, we do not review the merits of the underlying case. *See Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978). A temporary injunction is an extraordinary remedy, the purpose of which is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). In this context, the status quo is the last, actual, peaceable, noncontested status between the parties to the controversy that preceded the pending suit. *See In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004).

We review a trial court's decision to grant a temporary injunction for an abuse of discretion. *Butnaru*, 84 S.W.3d at 204. We must not substitute our judgment for the trial court's judgment unless the trial court's judgment was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Id.* More specifically, the trial court does not abuse its discretion when it bases its decision on conflicting evidence, or when some evidence of substantive and probative character exists to support its decision. *Health Care Serv. Corp. v. E. Texas Med. Ctr.*, 495 S.W.3d 333, 338 (Tex. App.—Tyler 2016, no pet.). An abuse of discretion arises when the trial court misapplies the law to the established facts of the case or when it concludes that the movant has demonstrated a probable injury or a probable right to recovery, and the conclusion is not reasonably supported by the evidence. *Id.* (citing *Tri–Star Petroleum Co. v. Tipperary Corp.*, 101 S.W.3d 583, 587 (Tex. App.–El Paso 2003, pet. denied)). A trial court also abuses its discretion in granting a temporary injunction unless it is clearly established by the facts that the applicant is threatened with an actual irreparable injury if the injunction is not granted. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925 (Tex. App.—Dallas 2006, no pet.).

## Applicable Law

To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable,

3

imminent, and irreparable injury in the interim.[3] ***Butnaru***, 84 S.W.3d at 204. There are two general types of temporary injunctions: prohibitive and mandatory. ***Health Care Serv. Corp.***, 495 S.W.3d at 337. A prohibitive injunction forbids conduct, and a mandatory injunction requires it. ***Id.*** A preliminary mandatory injunction is proper only if a mandatory order is necessary to prevent irreparable injury or extreme hardship. ***Id.*** at 338. Said another way, while granting a mandatory temporary injunction is within the sound discretion of the trial court, the application should be denied absent a clear and compelling presentation of extreme necessity or hardship. *See **Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.***, 343 S.W.3d 875, 883 (Tex. App.—El Paso 2011, no pet.).

To establish an irreparable injury, the applicant must show that he or she has no adequate remedy at law. ***Butnaru***, 84 S.W.3d at 204. A legal remedy is adequate if it is as complete, practical, and efficient to the ends of justice and its prompt administration as is equitable relief. *See **Alert Synteks, Inc. v. Jerry Spencer, L.P.***, 151 S.W.3d 246, 254 (Tex. App.—Tyler 2004, no pet.). An injury is irreparable if the injured party cannot be adequately compensated, or one for which the damages cannot be measured by any certain pecuniary standard. ***Butnaru***, 84 S.W.3d at 204. Evidence of fear, apprehension, and possibilities is not sufficient to establish any injury, let alone irreparable injury. *See **Marketshare Telecom***, 198 S.W.3d at 925.

Lay opinion testimony is limited to those opinions or inferences that are rationally based on the witness's perceptions and are helpful to clearly understanding the witness's testimony or determining a fact in issue. *See* TEX. R. EVID. 701. "Rationally based" means that the opinion must be one that a person could normally form from observed facts. ***Health Care Serv. Corp.***, 495 S.W.3d at 339. When an opinion is not rationally based on a witness's perception, the purported evidence is only speculation. ***Id.*** Speculative testimony has no probative value. ***Id.*** "Speculate" means "to take to be true on the basis of insufficient evidence." ***Id.***

## Mandatory Temporary Injunction

G-M contends that the evidence before the trial court did not permit it to rationally conclude that, without the temporary injunction, the City would suffer probable, imminent, and irreparable harm. It argues that the City has an adequate remedy at law available, namely, a money judgment against G-M. The City responds that (1) it will suffer irreparable injury without the injunction because G-M's financial status makes satisfaction of a judgment uncertain,

---

[3] For purposes of this appeal, G-M challenges only the third element.

4

rendering its remedy at law inadequate; (2) it and its residents will suffer imminent and irreparable injury because it has sustained a loss in its capital reserves resulting in a "freeze" for necessary capital expenditures, which adversely affects its ability to provide city services; and (3) the trial court was within its discretion to grant the injunction because G-M's wrongful conduct was recurrent or continuous.

The last, actual, peaceable, noncontested status between the parties that preceded the controversy was when the parties operated under the contract rate for 2014-2015. The calculation of the correct rate under the contract for 2015-2016 is the subject of the controversy. The trial court's injunction required that G-M pay all future invoices directly to the City at the full $5.2137 per 1,000 gallon rate for 2015-2016 until otherwise ordered, which is a mandatory temporary injunction altering the status quo. The issuance of such a temporary mandatory injunction under these circumstances was proper only if the City made a clear and compelling presentation that without the injunction, it would suffer an actual irreparable injury resulting in extreme hardship, or that the injunction is extremely necessary to prevent an actual irreparable injury. *See Health Care Serv. Corp.*, 495 S.W.3d at 339; *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 883; *Marketshare Telecom, L.L.C.*, 198 S.W.3d at 925.

### G-M's Ability to Satisfy a Judgment

The trial court found in its order that the City *may* not be able to recover the full amount of a money judgment following a trial on the merits. When a defendant is unable to pay damages, the plaintiff has no adequate remedy at law. *See Bankler v. Vale*, 75 S.W.3d 29, 39 (Tex. App.—San Antonio 2001, no pet.); *Tex. Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App.—Houston [1st Dist.] 1992, no writ).

Hemphill's City Manager, Donald Iles, was the only witness who testified at the temporary injunction hearing. He testified that he did not have access to G-M's financial records, and that he made an open records request concerning G-M's financial status. His request was granted, and he discovered that the balance of one of G-M's checking accounts was reduced by approximately $118,000.00 from January 2015 through July 2015. He also discovered that a separate G-M construction account showed an overdraft of approximately $15,000.00 at the end of one statement period. And he learned that G-M had a $5,000,000.00 capital investment in its new water treatment plant, although he could not testify as to G-M's

current debt balance on the project or how it was financed. Iles testified that these facts raised "some red flags that possibly they may not be able to pay."

When asked further about the accounts, he acknowledged that after the $118,000.00 reduction, G-M had a remaining balance of approximately $689,000.00. Portions of the account statement were entered into evidence as Plaintiff's Exhibit 11. Iles testified that he was unaware of the current status of the construction account. The City's counsel asked, "Based on that and the other information you testified to, is there a legitimate concern about the solvency of [G-M], in terms of its ability to repay these continually accruing arrearages?" Iles responded, "That argument could be made, that conclusion could be drawn. I don't have enough information about their financial situation to say yes or no; but I would be worried, yes, sir." G-M chose not to offer any further evidence of its financial status.

It is true that G-M spent significant funds to acquire its new water treatment plant, had a construction account that had been overdrawn during one month, and had a reduction in one of its checking accounts of approximately $118,000.00 at one point in time. However, the evidence available to the trial court when it issued the temporary injunction unequivocally shows that G-M had at least $689,000.00 in cash. The portions of the account statement submitted in Plaintiff's Exhibit 11 show that the account balance was as high as approximately $807,000.00 on January 1, 2015, and as low as approximately $637,000.00 on June 20, 2015. Plaintiff's Exhibit 11 also showed that through several deposits, the account balance continued to increase to approximately $689,000.00 by June 30, 2015. Iles testified that the City maintains a capital reserve of approximately $1.2 million on average, although he testified that the reserve had declined by about $100,000.00. Iles also testified that the arrearages continue to accrue at approximately $10,000.00 per month while this dispute is pending.

Iles admitted that he did not have enough information concerning G-M's solvency and ability to pay a judgment. Iles's statements that he was worried about whether G-M could satisfy a judgment can only be viewed as speculative, which is not probative evidence of G-M's alleged inability to satisfy a money judgment for this contractual dispute. *See Health Care Serv. Corp.*, 495 S.W.3d at 339; *Marketshare Telecom*, 198 S.W.3d at 925.

Here, the City has an adequate remedy at law, a money judgment for damages. It is measured by a certain pecuniary standard—essentially the difference between the full contract rate for 2015-2016 and what G-M actually paid during the disputed period at the time of

6

judgment. Moreover, based on the evidence before the trial court, it was unreasonable for it to conclude that G-M may be unable to satisfy a money judgment.

**G-M's Impact on the City's Fiscal Status**

The trial court also found that G-M's failure to pay the full amount of the invoices has adversely impacted the City's fiscal status. The City contends that G-M's actions have impacted its capital reserves and forced the City to freeze planned capital expenses, which adversely affected its ability to provide services to its citizens. G-M responds that the evidence does not reasonably lead to this conclusion, and that there is no evidence that its actions resulted in a threat of imminent or irreparable injury.

Iles testified that the City maintains an average capital reserve of approximately $1.2 million that has been reduced by approximately $100,000.00 during this dispute. Consequently, Iles decided to freeze budgeted capital expenditures while this lawsuit was pending, including purchases of a bucket truck for the electric department, a "skid steer unit" and storage building for the utility department, a photocopier, a line extension project for the water department, and a construction project for general administration. The total budgeted cost of the items is $222,300.00. Iles testified that the City has very little debt and it budgeted these expenses to be paid through direct cash outlays out of the City's pooled cash. Iles testified that he froze these capital expenses because of G-M's failure to pay the invoices at the full rate, and that G.M.'s actions adversely affected the City's ability to provide services. On cross-examination, when asked what service is not being provided, Iles cited the electric department's need for a new bucket truck as an example. He stated that the current truck failed the dielectric test, and that the truck is old, expensive to operate, and needed to be replaced. But he admitted that the truck is still operational, and that if necessary, the City could have rented a newer truck. Iles also admitted that the City continues to provide all City services, including all utilities, and that to his knowledge, no one has suffered any property damage or personal injury as a result of G-M's failure to pay the full amount of the disputed invoices.

The City contends that the interruption of business relations can constitute irreparable harm that entitles it to injunctive relief. *See* **Miller v. Talley Dunn Gallery, LLC**, No. 05-15-00444-CV, 2016 WL 836775, at *6 (Tex. App.—Dallas Mar. 3, 2016, no pet.) (mem. op.). We generally agree that the interruption of business relations can constitute irreparable harm in certain circumstances, but the City has not met its burden to show that G-M's actions will cause

7

imminent irreparable injury here.  In *Miller*, after an acrimonious divorce, an ex-husband used confidential information pertaining to his ex-wife's art gallery in an effort to harm her business by ruining her reputation in the community.  *See id.* at *2.  For example, the ex-husband distributed sensitive financial information and sent scathing communications to the ex-wife's clients, artists she represented, and community leaders.  *See id.* at *6.  The ex-wife obtained a temporary injunction prohibiting this conduct, because it caused actual irreparable harm to her business, and the injunction was upheld on appeal.  *See id.*

This case is distinguishable.  While this dispute has no doubt affected the City's short-term ability to make all of the budgeted capital purchases at the preferred time, the evidence shows that the City maintains capital reserves of over $1,000,000.00, it can negate the effects of its postponed capital expenses, and that it is still able to provide all services until this matter can be resolved at trial.  Based on this evidence, the City did not make a clear and compelling presentation that would allow the trial court to reasonably conclude that the City or its residents will suffer an imminent or irreparable injury resulting in extreme hardship without the mandatory temporary injunction.

### Recurring or Continuous Injury

The trial court also found that the City will have to file suit against G-M every month to recover the amounts due under the terms of the parties' contract.  The City argues that even if it has an adequate remedy at law, the injury is recurring or continuous, and consequently, equity authorized the trial court to grant a temporary injunction.  *See 183/620 Grp. Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 905 (Tex. App.—Austin 1989, writ dism'd w.o.j.) (citing *Sinclair Ref. Co. v. McElree*, 52 S.W.2d 679, 681 (Tex. Civ. App.—Dallas 1932, no writ)).  The basis for the doctrine is as follows:

> As a general rule, where an injury committed by one against another is continuous or is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction.  The fact that an injured person has the right of successive actions for the continuance of the wrong does not make it an adequate remedy at law which bars the jurisdiction of a court of equity to grant an injunction to restrain the continuance of the injury.

*Sinclair Ref. Co.*, 52 S.W.2d at 681.  The City has not established the doctrine's applicability here.  It does not argue that the remedy at law requires the bringing of successive actions with each monthly breach of the contract.  Moreover, the City will be made whole by a single money

judgment. *See **Horton v. Robinson***, 776 S.W.2d 260, 268 (Tex. App.—El Paso 1989, no writ) (distinguishing ***Sinclair***, noting that only in absence of adequate remedy at law can equitable injunctive relief be granted, and holding that once contract was breached, plaintiff was entitled to recover all past, present, and future damages, and consequently, money judgment was adequate remedy at law).

## Conclusion

The City has an adequate remedy at law that will make it whole, namely, a money judgment. Although there are circumstances in which a party may obtain a mandatory temporary injunction requiring prejudgment preservation of disputed funds in a breach of contract action, the City has not met that burden here. We hold that the City has failed to make a clear and compelling presentation of evidence that would allow the trial court to reasonably conclude that the City or its residents will suffer an imminent or irreparable injury resulting in extreme hardship without the mandatory temporary injunction, or that the City demonstrated that an injunction was extremely necessary to prevent actual irreparable injury. *See **Health Care Serv. Corp.***, 495 S.W.3d at 341. The trial court abused its discretion in issuing the mandatory temporary injunction requiring G-M to pay the monthly invoices at the full $5.2137 per 1,000 gallon rate until otherwise ordered.

G-M's second issue is sustained. The City has not shown that it is entitled to mandatory temporary injunctive relief, and consequently, G-M's second issue is dispositive. Therefore, we need not consider G-M's remaining issues pertaining to whether the City was required to file a bond and whether the trial court improperly ordered full and final relief, because those issues presuppose that mandatory temporary injunctive relief was appropriate in these circumstances. *See* TEX. R. APP. P. 47.1; ***In re S.N.***, 272 S.W.3d 45, 60 (Tex. App.—Waco 2008, no pet.) ("[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further.").

## DISPOSITION

Because the trial court abused its discretion in ordering G-M to pay the monthly invoices at the full $5.2137 per 1,000 gallon rate until otherwise ordered, the April 5, 2016 temporary injunction is immediately ***dissolved***, and the case is ***remanded*** to the trial court for further proceedings.

**BRIAN HOYLE**
Justice

Opinion delivered November 22, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 22, 2016**

**NO. 12-16-00129-CV**

**G-M WATER SUPPLY CORPORATION,**
Appellant
V.
**CITY OF HEMPHILL, TEXAS,**
Appellee

Appeal from the 1st District Court
of Sabine County, Texas (Tr.Ct.No. 13,200)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the trial court's temporary injunction dated April 5, 2016, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's temporary injunction of April 5, 2016, ordering **G-M WATER SUPPLY CORPORATION**, to pay the monthly invoices at the full $5.2137 per 1,000 gallon rate until otherwise ordered, be **dissolved** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

# THE STATE OF TEXAS
# M A N D A T E
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO THE 1ST DISTRICT COURT OF SABINE COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 22nd day of November, 2016, the cause upon appeal to revise or reverse your judgment between

**G-M WATER SUPPLY CORPORATION, Appellant**

**NO. 12-16-00129-CV; Trial Court No. 13,200**

Opinion by Brian Hoyle, Justice.

**CITY OF HEMPHILL, TEXAS, Appellee**

was determined; and therein our said Court made its order in these words:

"THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the trial court's temporary injunction dated April 5, 2016, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's temporary injunction of April 5, 2016, ordering **G-M WATER SUPPLY CORPORATION** to pay the monthly invoices at the full $5.2137 per 1,000 gallon rate until otherwise ordered, be **dissolved** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; and that this decision be certified to the court below for observance."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the xx day of November, 2016.

PAM ESTES, CLERK

By: ___Katrina McClenny___
    Chief Deputy Clerk